Andrew M. Spurchise, Bar No. 245998
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022.3298
Telephone: 212.583.9600
Facsimile: 212.832.2719

Alice H. Wang, Bar No. 289631
LITTLER MENDELSON, P.C.
333 Bush Street, 34th Floor
San Francisco, California 94104
Telephone: 415.433.1940
Facsimile: 415.399.8490

Attorneys for Defendants
UBER TECHNOLOGIES, INC.; RASIER, LLC;
and RASIER-CA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

LUCIA GRECO,

Plaintiff,

v.

UBER TECHNOLOGIES, INC.; RASIER, LLC; and RASIER-CA, LLC,

Defendants.

Case No. 4:20-cv-02698-YGR

**DECLARATION OF ROSEMARY BARAJAS IN SUPPORT OF DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC AND RASIER-CA, LLC'S MOTION TO COMPEL ARBITRATION**

Date: August 11, 2020
Time: 2:00 p.m.
Judge: Hon. Yvonne Gonzalez Rogers
Location: 1301 Clay Street, Ctrm. 1, 4th Floor.

Complaint Filed: April 19, 2020

I, Rosemary Barajas, declare and state:

1. I am over the age of 18 and I submit this declaration in support of Defendants Uber Technologies, Inc. ("Uber"), Rasier, LLC ("Rasier") and Rasier-CA, LLC's ("Rasier-CA") Motion to Compel Arbitration. I have personal knowledge of each fact stated in this declaration and, if called as a witness, I could and would competently and truthfully testify thereto.

2. Uber is a technology company that has created and maintains software applications for smartphones (the "Uber Apps"), including the Uber Rider App and Uber Driver App, that enable registered riders seeking rides to request them from registered independent third party transportation providers ("Drivers") looking to provide rides for profit in the rider's geographic area.

3. I am a Lead Paralegal, Litigation at Uber. I am familiar with Uber's policies and procedures for maintaining in its business records the agreements between Uber and registered riders, including the Uber Terms and Conditions. It is the custom and practice of Uber to maintain in its business records copies of Uber's past and present Terms and Conditions, as well as information related to past and present rider signup procedures.

4. In order to network with Drivers via the Uber Apps, users must first register an account with Uber. A rider account can be created from the company's website: https://clients.uber.com/. Alternatively, a rider account can be created from within the Uber Rider App itself. A user cannot create a rider account without affirmatively accepting Uber's Terms & Conditions.

5. In the normal course of its business, Uber maintains records regarding when, where, and how riders register to use the Uber Rider App. As a Lead Paralegal, Litigation, I have access to these registration records, and I am familiar with them and the manner in which they are updated and maintained. At the request of counsel, I reviewed the rider registration records for Plaintiff Lucia Greco and was able to identify the date and method by which Ms. Greco registered for a rider account with Uber. Specifically, Ms. Greco registered for a rider account on March 15, 2013, in the state of California. She did so via a website controlled by Uber and on a web browser on a mobile device with an Android operating system. Ms. Greco provided payment information in connection with her registered account.



LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

6. To confirm the process through which Ms. Greco created her Uber account via Uber's website on March 15, 2013, I accessed historical screenshots of the Uber website's rider registration page through the Internet Archive (http://archive.org/web/), on May 27, 2020. I searched the Internet Archive for the following URL to obtain a copy of the Uber website's rider registration page: https://clients.uber.com. The Internet Archive does not have a historical screenshot of the Uber website's rider registration page from March 15, 2013, but it does have historical screenshots of that page from January 26, 2013, which is attached as **Exhibit A**, and from April 8, 2013, which is attached as **Exhibit B**. **Exhibit A** is a true and correct copy of the Uber website's rider registration page as it existed on January 26, 2013. **Exhibit B** is a true and correct copy of the Uber website's rider registration page as it existed on April 8, 2013. Aside from a comma in the first sentence and update to the copyright in the bottom right-hand corner, the two pages are identical, indicating that, on March 15, 2013 (the day that Plaintiff signed up for her Uber rider account and agreed to the Terms and Conditions) the page she saw would have appeared as it does in Exhibits A and B.

7. As shown in **Exhibits A and B**, to create an Uber rider account on March 15, 2013, using the Uber website's rider registration page, Ms. Greco was required to input the following data in fields contained on a single webpage: name, email address, password (to be selected by the user), mobile phone number, language, payment information, and promotion code (if any).

8. As shown in **Exhibits A and B**, immediately following the above fields is a bolded section heading titled "**Legal Information**". Directly below that bolded section heading, the following single-sentence notice was visibly displayed: "By signing up I agree to the Uber **Terms and Conditions** and **Privacy Policy** and understand that Uber is a request tool, not a transportation carrier." The phrases "Terms and Conditions" and "Privacy Policy" were in bold and underlined, indicating hyperlinks. When the user clicked the "Terms and Conditions" hyperlink, the relevant Terms then in effect would have been displayed for the user.

9. As can be seen in **Exhibits A and B**, below the above notice of, and linked, Terms and Conditions, but immediately above the "Sign Up" button on the bottom of the webpage, is a checkbox. To the right of that checkbox, the following bolded single-sentence notice was visibly displayed: "**I**



LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

**agree to the Uber Terms and Conditions and Privacy Policy**". In order to determine whether users could have clicked the "Sign Up" button and proceeded to create an account without checking the checkbox, I accessed historical screenshots of the Uber website's rider registration page through the Internet Archive (http://archive.org/web/) on July 9, 2020 and clicked "Sign Up" without checking the checkbox. As expected, an error message in red font stating, "You must agree to the Uber Terms and Conditions and Privacy Policy to continue.", appeared above the checkbox, demonstrating that users would not have been able to complete the signup process without checking the box confirming agreement to Uber's Terms. Attached hereto as **Exhibit C** is a true and correct copy of the Uber website's rider registration page as it existed on January 26, 2013 with the error message displayed, which occurred after I clicked the "Sign Up" button without clicking the checkbox as described above. **Exhibit D** is a true and correct copy of the Uber website's rider registration page as it existed on April 8, 2013 with the same error message displayed after I followed the same process.

10. Upon completing the above fields, and checking the box confirming agreement to Uber's Terms and Conditions and Privacy Policy, the user would then have been able to create a rider account by clicking the red "Sign Up" button at the bottom of the webpage.

11. Ms. Greco could not have completed the account creation process without completing the aforementioned steps.

12. Rasier is a wholly-owned subsidiary of Uber that contracts with registered Drivers to furnish them with access to the Uber Driver App.

13. I accessed from Uber's business records and obtained the Terms and Conditions that went into effect for U.S. riders on September 14, 2012, and which were in effect on March 15, 2013, the date on which Ms. Greco completed her Uber account registration processes. A true and correct copy of these Terms and Conditions is attached hereto as **Exhibit E**.

14. I have also accessed Uber's business records which indicate that an email with the subject line, "We've Updated Our Terms of Use," was sent to the email address associated with the account registered to Ms. Greco in November 2016 (the "November 2016 Email"). Uber sent the November 2016 Email to all riders in November 2016. The email was sent to Ms. Greco on



LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

November 14, 2016. A true and correct copy of the content of the email is attached hereto as **Exhibit F**.[1] As depicted in **Exhibit F**, the November 2016 email states that "we've made some updates to our US Terms of Use" and further notes that the updates "revise[] our arbitration agreement which explains how legal disputes are handled." The email also states that the "updated Terms are effective as of November 21, 2016, so please make sure to read them fully." The email also instructs that the reader can "access [the Terms] here." The word "here" is displayed in bright green text, indicating that it is a hyperlinked text. When a rider clicks the link, she would have been taken to a screen that displays the November 21, 2016 Terms. The email also states that "[i]f you use our app or other services on or after that date, you're confirming you've read and agree to the updated Terms."

15. I accessed from Uber's business records the Terms of Use that went into effect for U.S. riders on November 21, 2016 and that were available via hyperlink in the email in **Exhibit F**. A true and correct copy of these Terms of Use is attached hereto as **Exhibit G**.

16. In the normal course of its business, Uber maintains records regarding the number of trips riders take using the Uber Rider App. I have access to these records, and I am familiar with these records and the manner in which they are maintained. In reviewing those records, I was able to identify that, from March 15, 2013 through July 1, 2020, Ms. Greco used the Uber App to network and complete 1,501 rides. The first trip Ms. Greco took after receiving the November 2016 email (¶ 14, *infra*) was on November 17, 2016. Since receiving the November 2016 email, Ms. Greco has used the Uber App to network and complete 1,072 trips through July 1, 2020.

//

//

//

//

---

[1] The name "Jacqueline" appears on **Exhibit F** only because it is a sample of the email that was sent to Plaintiff in November 2016, not because it is the actual email sent to Plaintiff. In the actual email that was sent to Plaintiff, the opening salutation would have stated "Dear Lucia."



LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct. Executed this 17th day of July, 2020 at San Francisco, California.

ROSEMARY BARAJAS

4821-6156-3843.1 073208.1995



LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940