Andrew M. Spurchise, Bar No. 245998
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022.3298
Telephone: 212.583.9600
Facsimile: 212.832.2719

Alice H. Wang, Bar No. 289631
LITTLER MENDELSON, P.C.
333 Bush Street, 34th Floor
San Francisco, California 94104
Telephone:    415.433.1940
Facsimile:    415.399.8490

Attorneys for Defendants
UBER TECHNOLOGIES, INC.; RASIER, LLC;
and RASIER-CA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LUCIA GRECO,<br><br>                    Plaintiff,<br><br>        v.<br><br>UBER TECHNOLOGIES, INC.; RASIER,<br>LLC; and RASIER-CA, LLC,<br><br>                    Defendants. | Case No. 4:20-cv-02698-YGR<br><br>**MEMORANDUM OF POINTS AND<br>AUTHORITIES IN SUPPORT OF<br>DEFENDANTS UBER TECHNOLOGIES,<br>INC., RASIER, LLC AND RASIER-CA,<br>LLC'S MOTION TO COMPEL<br>ARBITRATION**<br><br>Date:            September 1, 2020<br>Time:            2:00 p.m.<br>Judge:          Hon. Yvonne Gonzalez Rogers<br>Location:      1301 Clay Street, Ctrm. 1,<br>                    4th Floor.<br><br>Complaint Filed:  April 19, 2020 |

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

i.

(Case No. 4:20-cv-02698-YGR)

MPAS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................................... 2

    A.   Plaintiff Accepted Uber's Terms & Conditions, Including The Arbitration
          Agreement Contained Within, Not Once, But *Twice*. ................................... 2

          1.   Plaintiff First Accepted Uber's Terms When She Registered To Use
               The Uber App. ................................................................................... 2

          2.   Plaintiff Agreed To Uber's Terms A *Second* Time By Continuing To
               Use The Uber App After Receiving The November 2016 Updated
               Terms. ................................................................................................ 3

    B.   Uber's Terms Include A Prominent, Valid Arbitration Agreement. ........................... 4

    C.   Plaintiff Acknowledged The Validity Of Her Arbitration Agreement And
          Initiated Arbitration Before AAA Prior To Changing Course And Filing In
          This Court. ............................................................................................................. 6

III.  LEGAL STANDARD ..................................................................................................... 7

IV.   ARGUMENT .................................................................................................................. 7

    A.   The FAA Governs the Agreement. ........................................................................... 7

    B.   Threshold Questions Of Arbitrability Must Be Decided By The Arbitrator. ............. 8

    C.   Even If The Court Finds That It, Rather Than The Arbitrator, Should Decide
          Arbitrability, Both Gateway Issues Are Satisfied. ..................................................... 10

          1.   Plaintiff Entered Into A Valid Agreement To Arbitrate. .............................. 11

          2.   Plaintiff's Claims Are Covered By The Arbitration Agreement. .................. 13

          3.   The Arbitration Agreement Is Not Unconscionable. .................................... 15

    D.   Plaintiff Cannot Avoid The Arbitration Agreement Simply Because Uber
          Briefly And Inadvertently Made Late Payments On Invoices From Two
          Unrelated Cases. .................................................................................................... 16

V.    CONCLUSION ............................................................................................................... 18

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995)..................................................................................8

*American Exp. Co. v. Italian Colors Restaurant*,
   570 U.S. 228 (2013)..................................................................................7

*Anderson v. Pitney Bowes, Inc.*,
   No. C 04-4808 SBA, 2005 WL 1048700 (N.D. Cal. May 4, 2005) ...........................10

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)..................................................................................7

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986)..................................................................................14

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ...............................................................9, 10

*Brown v. Dillard's, Inc.*,
   430 F.3d 1004 (9th Cir. 2005) ...................................................................17

*Bruster v. Uber Techs., Inc.*,
   188 F. Supp. 3d 658 (N.D. Ohio. 2016), *recons. denied*, 2016 WL 4086786 (N.D.
   Ohio Aug. 2, 2016) ...................................................................................9

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006)..................................................................................8

*Cordas v. Uber Techs., Inc.*,
   228 F. Supp. 3d 985 (N.D. Cal. 2017) ................................................... *passim*

*Crawford v. Beachbody, LLC*,
   No. 14-CV-1583 GPC, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ........................11

*Cubria v. Uber Techs., Inc.*,
   242 F. Supp. 3d 541 (W.D. Tex. 2017)........................................................1, 10, 12

*Davis v. Nordstrom, Inc.*,
   755 F.3d 1089 (9th Cir. 2014) ...................................................................13

*Delgado v. Progress Fin. Co.*,
   No. 1:14-cv-00033-LJO-MJS, 2014 WL 1756282 (E.D. Cal. May 1, 2014) ..............14

Littler Mendelson, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

*In re Facebook Biometric Info. Privacy Litig.*,
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) ............................................................11, 13

*Geier v. m-Qube Inc.*,
    824 F.3d 797 (9th Cir. 2016) (per curiam) ...................................................................11

*Graf v. Match.com, LLC*,
    No. CV 15-3911 PA, 2015 WL 4263957 (C.D. Cal. July 10, 2015) ...........................11

*Kindred Nursing Centers Ltd. P'ship v. Clark*,
    137 S. Ct. 1421 (2017) ...................................................................................................7

*Koyoc v. Progress Fin. Co.*,
    No. CV 13-09165-RSWL, 2014 WL 1878903 (C.D. Cal. May 9, 2014) .....................14

*Lathan v. Uber Techs., Inc.*,
    266 F. Supp. 3d 1170 (E.D. Wis. 2017) .........................................................................9

*Lee v. Uber Techs., Inc.*,
    208 F. Supp. 3d 886 (N.D. Ill. 2016) ..............................................................................9

*McLellan v. Fitbit, Inc.*,
    No. 3:16-CV-00036-JD, 2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) .....................10

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) .......................................................................................1, 12

*Micheletti v. Uber Techs., Inc.*,
    213 F. Supp. 3d 839 (W.D. Tex. 2016) ...........................................................................9

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) ...................................................................................9, 16

*Momot v. Mastro*,
    652 F.3d 982 (9th Cir. 2011) ..........................................................................................9

*Mortensen v. Bresnan Commc'ns LLC*,
    722 F.3d 1151 (9th Cir. 2013) .........................................................................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ..........................................................................................................11

*Mumin v. Uber Techs., Inc.*,
    239 F. Supp. 3d 507 (E.D.N.Y. 2017), ............................................................................9

*Nevarez v. Forty Niners Football Co.*,
    LLC, No. 16-CV-07013, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) .....................11

*Nguyen v. Barnes & Noble, Inc.*,
    763 F.3d 1171 (9th Cir. 2014) .......................................................................................13

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA 90067.3107
310.553.0308

*Ortega v. Uber Techs. Inc.*,
   No. 15CV7387NGGJO, 2017 WL 1737636 (E.D.N.Y. May 2, 2017)............................9

*Rent-A-Center, W., Inc. v. Jackson*,
   561 U.S. 63 (2010)...............................................................................................1, 8

*Rimel v. Uber Techs., Inc.*,
   No. 6:15-cv-2191-Orl-41KRS, 2016 WL 6246812 (M.D. Fla. Aug. 4, 2016)..............9

*Sena v. Uber Techs. Inc.*,
   No. CV-15-02418-PHX-DLR, 2016 WL 1376445 (D. Ariz. Apr. 7, 2016), *recons. denied*, 2016 WL 4064584 (D. Ariz. May 03, 2016)...............................................9

*Sienkaniec v. Uber Techs., Inc.*,
   No. 17-CV-4489, 2017 WL 7791193 (D. Minn. Dec. 18, 2017)................................9

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ...............................................................................14

*Sink v. Aden Enters.*,
   352 F.3d 1197 (9th Cir. 2003) .............................................................................17

*Swinerton Builders v. Am. Home Assur. Co.*,
   No. C-12-6047 EMC, 2013 WL 2237885 (N.D. Cal. May 21, 2013) .......................9

*Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*,
   368 F.3d 1053 (9th Cir. 2004) .............................................................................18

*Ulbrich v. Overstock.com, Inc.*,
   887 F. Supp. 2d 924 (N.D. Cal. 2012) ................................................................16

*United States v. Sutcliffe*,
   505 F.3d 944 (9th Cir. 2007) ................................................................................8

*West v. Uber Technologies*,
   No. 2:18-cv-3001-PSG-GJS, ECF No. 47 (C.D. Cal. Sept. 5, 2018) .................1, 12

*Zawada v. Uber Techs., Inc.*,
   No. 16-cv-11334, 2016 WL 7439198 (E.D. Mich. Dec. 27, 2016), *aff'd*, 2018 WL 1313603 (Mar. 14, 2018)......................................................................................9

**California Cases**

*Belton v. Comcast Cable Holdings, LLC*,
   151 Cal. App. 4th 1224 (2007) ............................................................................15

*Binder v. Aetna Life Ins. Co.*,
   75 Cal. App. 4th 832 (1999) ................................................................................11

*Cruise v. Kroger Co.*,
   233 Cal. App. 4th 390 (2015) ...................................................................................14

*Harounsheily v. Uber Techs. Inc.*,
   No. 19STCV05712 (Aug. 8, 2019).....................................................................2, 9, 14

*Fadaee v. Uber Techs. Inc.*,
   No. BC681145 (April, 19 2018) ..................................................................................1

*Feld v. Uber Techs. Inc.*,
   No. 19STCV26766 (April 17, 2020) ....................................................................1, 9, 17

*Jones v. Wells Fargo Bank*,
   112 Cal. App. 4th 1527 (2003) ...................................................................................15

*Nielsen v. Uber Technologies*,
   No. BC705695 (Cal. Super. Ct. Feb. 22, 2019) .........................................................13

*Pinnacle Museum Tower Ass'n v. Pinnacle Mktg. Dev. (US), LLC*
   55 Cal.4th 223 (2012) ...........................................................................................15, 16

*Sanchez v. Valencia Holding Co., LLC*
   61 Cal. 4th 899 (2015) ...............................................................................................15

*Serafin v. Balco Properties Ltd., LLC*,
   235 Cal. App. 4th 165 (2015) .....................................................................................15

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
   25 Cal. App. 3d 987 (1972) ........................................................................................11

**Federal Statutes**

9 U.S.C.
   §§ 1-2 ...........................................................................................................................8
   § 2..........................................................................................................................5, 6, 11
   § 4..................................................................................................................................8

Federal Arbitration Act ...................................................................................... *passim*

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA 90067.3107
310.553.0308

## I.   INTRODUCTION

After networking over 1,500 completed rides via Uber's software applications for the ridesharing industry, Plaintiff Lucia Greco now seeks to disavow a part of her binding contract with Uber—the arbitration agreement. Before first using Uber's technology, which networks riders with registered independent, third-party transportation providers ("Drivers"), Plaintiff registered an Uber rider account in March 2013. During that process, she expressly agreed to be bound by Uber's Terms and Conditions (the "Terms"), which included a clear and conspicuous arbitration agreement and delegation clause ("Arbitration Agreement"). Plaintiff subsequently received notice of and accepted an updated version of the Arbitration Agreement issued in November 2016.

The Court should reject Plaintiff's efforts to evade the Terms to which she has agreed and order Plaintiff to arbitrate her claims. Under the terms of the Arbitration Agreement, Plaintiff agreed to arbitrate "any dispute, claim or controversy" she may have against Uber," including those "arising out of or relating to" the Terms and its existence, breach, termination, enforcement, interpretation, or validity, or Plaintiff's access to or use of Uber's application or services. The arbitrator and not the Court must therefore resolve any disputes about the validity, application, scope or enforceability of the Arbitration Agreement. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).  Even if the Court decided to resolve any such disputes (and it should not), the result is the same: arbitration.

Plaintiff has acknowledged she is bound by the Arbitration Agreement.  Indeed, she initially brought this dispute in the proper forum, in arbitration before AAA, attaching Uber's Terms as the basis of her filing in that forum, an express acknowledgement that she had agreed to them. Plaintiff, however, changed course and filed the instant action in federal court. But there was no basis to do so, and her dispute remains subject to arbitration.

Judges in California and nationwide have affirmed Uber's Arbitration Agreement as valid and enforceable.  *See e.g.*, *West v. Uber Technologies*, No. 2:18-cv-3001-PSG-GJS, ECF No. 47, at 7 (C.D. Cal. Sept. 5, 2018); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80 (2d Cir. 2017); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017); *Cubria v. Uber Techs., Inc.*, 242 F. Supp. 3d 541, 548 (W.D. Tex. 2017); *Fadaee v. Uber Techs. Inc.*, LASC Case No. BC681145 (2018); *Nielsen v. Uber Techs. Inc.*, LASC Case No. BC705695 (2019); *Feld v. Uber Techs. Inc.*, LASC Case No.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

1.

(Case No. 4:20-cv-02698-YGR)

MPAS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

19STCV26766 (2020); *Harounsheily v. Uber Techs. Inc.*, LASC Case No. 19STCV05712 (2019).[1]

## II.   FACTUAL BACKGROUND

### A.   Plaintiff Accepted Uber's Terms & Conditions, Including The Arbitration Agreement Contained Within, Not Once, But *Twice*.

#### 1.   Plaintiff First Accepted Uber's Terms When She Registered To Use The Uber App.

Uber is a technology company that created and maintains a software application (the "Uber Rider App") that enables registered riders seeking rides to network with registered Drivers looking to provide rides for profit in the rider's geographic area.  Declaration of Rosemary Barajas ("Barajas Decl.") ¶ 2.

Before riders like Plaintiff can use the Uber Rider App and request rides, they must first create an Uber account and accept Uber's Terms & Conditions.  *See id.,* ¶ 4.

Uber's records show that Plaintiff's rider account was created via Uber's website on a web browser that she accessed on a mobile device running an Android operating system.  *Id.* ¶ 5.  During the time when Plaintiff registered for a rider account via the Uber website, the website registration page required a user to input information including name, email address, password (to be selected by the user), language, mobile phone information, payment information, and promotion code (if any) into a form on a single webpage.[2]  *Id.* ¶ 7, Exs. A & B.  Immediately below these fields was a bolded section entitled "**Legal Information**."  *Id.* ¶ 8. Directly below that bolded section heading, the following notice was displayed:  "By signing up I agree to the Uber **Terms and Conditions** and **Privacy Policy** and understand that Uber is a request tool not a transportation carrier."  The phrases "Terms and Conditions" and "Privacy Policy" were in bold and underlined, indicating hyperlinks.  If the user clicked the "Terms and Conditions" hyperlink, the relevant Terms then in effect would have been displayed.  *Id.* ¶ 8.

---

[1] The state court Orders cited are attached to Defendants' Request for Judicial Notice ("RJN") as Exhibits A-D.

[2] Exhibits A, B, C and D to the Declaration of Rosemary Barajas are historical screenshot images from the Internet Archive, sometimes referred to as the "Wayback Machine."  (*See* Barajas Decl. ¶ 6 Exs. A-B; Barajas Decl. ¶ 9 Exs. C-D.)  As explained in Uber's concurrently filed Request for Judicial Notice, courts routinely take judicial notice of webpages obtained from the Wayback Machine.  (RJN ¶ 1.)

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

2.                    (Case No. 4:20-cv-02698-YGR)

MPAS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

Below the conspicuous—and linked—Terms and Conditions, but immediately above the "Sign Up" button on the bottom of the webpage, was a checkbox.  To the right of that checkbox, the following bolded single-sentence notice was visibly displayed:  "**I agree to the Uber Terms and Conditions and Privacy Policy**".  *Id.* ¶ 9.  Plaintiff would not have been able to complete the signup process without checking the box confirming agreement to Uber's Terms.  If a user had attempted to do so, the following error message in red font would have appeared above the checkbox:  "You must agree to the Uber Terms and Conditions and Privacy Policy to continue."  *Id.* ¶ 9.

Upon completing the above fields, and checking the box confirming agreement to Uber's Terms and Conditions and Privacy Policy, the user would then be able to create a rider account by clicking the red "Sign Up" button at the bottom of the webpage.  *Id.* ¶ 10.  Ms. Greco could not have completed the account creation process without completing the aforementioned steps.  *Id.* ¶ 11.  Plaintiff completed these steps on March 15, 2013.  *Id.* ¶¶ 5-10.  Accordingly, Plaintiff is bound by Uber's Terms, including the mandatory arbitration provision contained therein.

**2.    Plaintiff Agreed To Uber's Terms A *Second* Time By Continuing To Use The Uber App After Receiving The November 2016 Updated Terms.**

In addition to agreeing to Uber's Terms when she first registered to use the Uber Rider App in March 2013, Plaintiff *also* agreed to an updated version of Uber's Terms in November 2016.  *See* Barajas Decl. ¶¶ 14-15.  In November 2016, Uber emailed all riders – Plaintiff included – and notified them of Uber's updated Terms (the "November 2016 email").  *Id.* & Ex. F.  Uber sent the November 2016 email to Plaintiff on November 14, 2016.  The November 2016 email informed riders that "we've made some updates to our US Terms of Use" and further notes that the updates "revise[] our arbitration agreement which explains how legal disputes are handled."  *Id.*  The email also states that the "updated Terms are effective as of November 21, 2016, so please make sure to read them fully."  *Id.*  The email also instructs that the reader can "access [the Terms] here."  The word "here" is displayed in bright green text, indicating that it is a hyperlinked text.  When a rider clicks the link, she would have been taken to a screen that displays the November 21, 2016 Terms.  The email also states that "[i]f you use our app or other services on or after that date, you're confirming you've read and agree to the updated Terms."  *Id.*

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

3.

(Case No. 4:20-cv-02698-YGR)

MPAS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

After receiving the November 2016 email, Plaintiff continued to use the Uber Rider App to network rides with Drivers more than one thousand times, including as recently as July 1, 2020. Barajas Decl., ¶ 16.

**B.     Uber's Terms Include A Prominent, Valid Arbitration Agreement.**

The Terms & Conditions to which Plaintiff assented when she registered in March 2013, state in the first section that a "legal agreement" between the rider and Uber was created wherein the rider would be "bound by the terms and conditions of the Agreement, and any future amendments and additions to this Agreement as published from time to time. . .." *Id*. ¶ 13, Ex. E.  The version of the Terms then in effect, dated September 14, 2012 ("2012 Terms"), included the Arbitration Agreement, clearly labeled "**Dispute Resolution,**" stating: "You and Company agree that any dispute, claim or controversy arising out of or relating to this Agreement...or the use of the Service or Application...will be settled by binding arbitration." *Id*.  (Bold in original.)  The Arbitration Agreement further provided that threshold issues of arbitrability, including disputes regarding "enforcement, interpretation or validity" of the Agreement were delegated to the arbitrator.[3]  *Id*.  It also included an amendment provision allowing Uber to change the Arbitration Agreement, and explained how Plaintiff could reject any such changes. *Id*. (Changes).  The 2012 Terms notified Plaintiff in pertinent part that Uber:

> reserves the right to modify the terms and conditions of this Agreement or its policies relating to the Service or Application at any time, effective upon posting of an updated version of this Agreement on the Service or Application.  You are responsible for regularly reviewing this Agreement. Continued use of the Service or Application after any such changes shall constitute your consent to such changes.

*Id*.

Pursuant to the parties' agreement, Uber exercised its right to modify the 2012 Terms and the Arbitration Agreement following Plaintiff's initial assent to them, *id.*, and in November 2016, notified Plaintiff of these changes.  Barajas Decl., ¶ 14, Ex. F.  Those modifications do not affect the result

---

[3] The 2012 Terms also incorporate the AAA Commercial Rules (*Id.* [Arbitration Rules and Governing Laws]), which provide (in pertinent part): "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See,* https://www.adr.org/sites/default/files/Commercial%20Arbitration%20Rules%20and%20Mediation%20Procedures%20Jun.%2001%2C%202009%20Fee%20schedule%20Jun.%201%2C%202010.pdf (effective June 1, 2009) at R-7.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

4.                                          (Case No. 4:20-cv-02698-YGR)

MPAS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

here.  The version of the Arbitration Agreement accepted by Plaintiff when Uber sent the November 2016 email, like the version to which Plaintiff initially agreed, is broad:

> You and Uber agree that any dispute, claim or controversy arising out of or relating to (a) these Terms or the existence, breach, termination, enforcement, interpretation, or validity thereof, or (b) your access to or use of the Services at any time, whether before or after the date you agreed to the Terms, will be settled by binding arbitration . . . .

Nov. 21, 2016 U.S. Terms of Use, Barajas Decl., ¶ 15, Ex. G, § 2 (the "2016 Terms").

Like the 2012 Terms, the 2016 Terms delegate to the arbitrator all questions about the enforceability and scope of the Arbitration Agreement:

> The parties agree that the arbitrator ("Arbitrator") and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable. The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are unconscionable or illusory and any defense to arbitration, including waiver, delay, laches or estoppel.

*Id*. § 2 ("Rules and Governing Law"). The Arbitration Agreement further specifies (1) that the arbitration will be administered by the American Arbitration Association ("AAA"), (2) that the AAA will apply its "Consumer Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the 'AAA Rules') then in effect,"[4] and (3) that the "Federal Arbitration Act will govern [the] interpretation and enforcement" of the agreement.  *Id*.  In addition to citing the rules directly, the 2016 Terms also provide users with the AAA's "ADR.org" website address and the AAA's telephone number.  *Id*.

The Arbitration Agreement also includes several features that ensure that consumers have a simple, efficient, and fair means of resolving any disputes.  For example, riders may arbitrate any disputes in the counties where they reside (*id*. § 2 ("Location and Procedure")), and retain the option to commence certain kinds of claims in small claims court (*id*. § 2 ("Agreement to Binding Arbitration Between You and Uber")).  The arbitrator is empowered to award declaratory and injunctive relief in

---

[4] Rule 14 of the Consumer Rules delegates threshold issues of arbitrability to the arbitrator, similar to Rule 7 of the Commercial Rules incorporated into the 2012 Terms. *See,* https://adr.org/sites/default/files/Consumer_Rules_Web_1.pdf (effective September 1, 2014) at R-14.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

5.

(Case No. 4:20-cv-02698-YGR)

MPAS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

the rider's favor through individual arbitration. *Id.* § 2 ("Arbitrator's Decision"). And, unless the rider makes a claim for more than $75,000 or the arbitrator finds that a rider's claims are frivolous or brought for an improper purpose, Uber will pay all filing, administrative, and arbitrator fees associated with the arbitration. *Id.* § 2 ("Fees").

### C. Plaintiff Acknowledged The Validity Of Her Arbitration Agreement And Initiated Arbitration Before AAA Prior To Changing Course And Filing In This Court.

By completing all the steps necessary to register for Uber's services, accessing Uber's services and the Uber Rider App, networking rides from Drivers after first registering and even after Uber's Terms had been updated on November 21, 2016, Plaintiff unequivocally agreed to Uber's Terms, including the Arbitration Agreement. *See generally* Barajas Decl.

Plaintiff then took further steps recognizing her agreement. Plaintiff filed a demand for arbitration with the AAA on March 27, 2020. Compl., ¶ 52; *see also* Demand for Arbitration, Declaration of Morgan Jackson ("Jackson Decl."), ¶ 5 Ex. A. In response to the AAA Demand Form, Plaintiff attached a copy of Uber's Terms. *See id.* Plaintiff did not serve the demand on Uber until almost a month later on April 21, 2020. *See* Jackson Decl., ¶5. Uber first learned about the existence of the arbitration demand on April 18, 2020, when the AAA sent a letter to Plaintiff's counsel and a paralegal for Uber, stating vaguely that Uber had not complied with the AAA's policies regarding consumer claims, and that the AAA had "administratively closed" the arbitration that Plaintiff had opened—a decision made before Uber was even aware of Plaintiff's arbitration demand. *Id*. ¶ 4; Compl. Ex. A (the "April 18, 2020 AAA Letter"). Uber promptly contacted the AAA regarding its April 18, 2020 Letter and discovered that the AAA had administratively closed the file in Plaintiff's case because Uber had not paid fees in two unrelated matters pending before the AAA and thus decided, unbeknownst to Uber, to not administer Uber matters.[5] *Id*. ¶¶ 6-7.

Uber paid the outstanding fees for those cases within days after learning about this issue, and the AAA permitted Uber to continue arbitrating cases before the AAA—on April 30, 2020. *Id*. ¶ 9.

---

[5] These two unrelated matters had been withdrawn prior to AAA administration. Uber's Insurer mistakenly believed that if a demand was withdrawn or settled before any AAA administration began, AAA would not require a filing fee. However, once filed, AAA requires payment of filing fee even if demand is withdrawn.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940
6.   (Case No. 4:20-cv-02698-YGR)
MPAS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

Afterwards, Uber asked the AAA to proceed with Plaintiff's arbitration. *Id.* ¶ 10. The AAA responded that, because the case was administratively closed, "the AAA will not reopen the matter unless the parties agree to reopen the matter, or the AAA will abide by any court order directing the manner in which the previously closed case should or should not proceed." *Id.* ¶ 10 & Exhibit D. Alternatively, the AAA stated that it "would administer this case" if Plaintiff were to refile her demand. *Id.* Notwithstanding, Plaintiff refused to refile her demand and proceeded to file the instant lawsuit in court, in material violation of her agreement with Uber and necessitating this motion. *Id.* ¶ 11.

As discussed below, Plaintiff's claims are encompassed by the Arbitration Agreement and must be addressed in arbitration, not in court.

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") reflects a liberal federal policy favoring arbitration, and requires that arbitration agreements be rigorously enforced. *See Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424 (2017) (courts required "to place arbitration agreements on an equal footing with all other contracts" (internal citation omitted)); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). "[T]he FAA's purpose is to give preference (instead of mere equality) to arbitration provisions." *Mortensen v. Bresnan Commc'ns LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013). Thus, "courts must 'rigorously enforce' arbitration agreements according to their terms, including terms that 'specify with whom [the parties] choose to arbitrate their disputes,' and 'the rules under which that arbitration will be conducted.'" *American Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) (emphasis and internal citation omitted). "As arbitration is favored, those parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable." *Mortensen*, 722 F.3d at 1157 (citing *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)).

## IV. ARGUMENT

### A. The FAA Governs the Agreement.[6]

The parties' operative Arbitration Agreement is subject to the FAA for two independent

---

[6] Unless otherwise stated, the remaining references to Uber's Terms refer to the 2016 Terms.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

7.

(Case No. 4:20-cv-02698-YGR)

MPAS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

1    reasons.  First, the 2016 Arbitration Agreement expressly provides that "[t]he Federal Arbitration Act

2    . . . will govern [the Agreement's] interpretation and enforcement and proceedings pursuant thereto."

3    (Barajas Decl., ¶ 15, Ex. G, § 2.)  Thus, the parties clearly intended the FAA to apply, and the Court

4    should employ the parties' agreed upon choice of law. *See Buckeye Check Cashing, Inc. v. Cardegna*,

5    546 U.S. 440, 442-43 (2006) (applying the FAA to resolve motion to compel brought in state court

6    where the parties selected the FAA to govern in their arbitration agreement).

7           Second, the FAA applies to agreements (like the one at issue here) evidencing a transaction

8    involving commerce. *See* 9 U.S.C. §§ 1-2; *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274-

9    77 (1995) (interpreting the FAA's "involving commerce" provision as broadly as the phrase "affecting

10   commerce"; the FAA should be applied with the full reach of Congress' powers under the Commerce

11   Clause).  After Plaintiff agreed to Uber's 2012 Terms, Uber authorized her to use the Uber Rider App.

12   Barajas Decl. ¶¶ 4-10.  Where, as here, the Uber Rider App enables riders to network with Drivers via

13   the Internet in hundreds of cities throughout the United States, the "involving commerce" requirement

14   has been met, as many courts have found.  (*Id*. ¶2; *see Cordas*, 228 F. Supp. 3d at 987 ("Because

15   Uber's terms and conditions are 'a contract evidencing a transaction involving commerce,' they are

16   subject to the … FAA"); *see also United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("the

17   Internet is an instrumentality and channel of interstate commerce") (internal citation omitted).

18   Therefore, the FAA controls.

19          **B.      Threshold Questions Of Arbitrability Must Be Decided By The Arbitrator.**

20          The FAA requires courts to compel arbitration "in accordance with the terms of the agreement"

21   upon the motion of either party to the agreement, consistent with the principle that arbitration is a

22   matter of contract. 9 U.S.C. § 4. To the extent that Plaintiff challenges the formation, validity,

23   enforceability, scope, or waiver of the Arbitration Agreement, the Arbitration Agreement expressly

24   provides that those issues are to be decided by the arbitrator rather than a court. This type of delegation

25   clause, which delegates "gateway" questions about arbitrability to the arbitrator, has been recognized

26   by courts as proper and enforceable so long as the parties "clearly and unmistakably" demonstrate

27   their intent to have the arbitrator decide those questions. *Rent-A-Center, W.*, 561 U.S. at 70 ("An

28   agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

8.                              (Case No. 4:20-cv-02698-YGR)

MPAS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208-09 (9th Cir. 2016); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130-32 (9th Cir. 2015).

Here, the parties "clearly and unmistakably" agreed to arbitrate arbitrability, and the Court should enforce that agreement. The Arbitration Agreement provides that the arbitrator, rather than the court, "shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement . . . [and] shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are unconscionable or illusory and any defense to arbitration . . . ." Barajas Decl. ¶ 15, Ex. G, § 2.

In *Mohamed*, the Ninth Circuit considered a similar provision in an agreement between Uber and a Driver that delegated to the arbitrator authority to decide the "enforceability, revocability or validity" of the arbitration provision and concluded that the provision constituted "clear and unmistakable" intent to arbitrate arbitrability.[7] 836 F.3d at 1108-10. Courts routinely find that similar language evidences an agreement to arbitrate arbitrability. *See, e.g.*, *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (language that delegated authority to arbitrator to determine the validity or application of any of the arbitration agreement's provisions was a clear and unmistakable agreement to arbitrate the question of arbitrability); *Swinerton Builders v. Am. Home Assur. Co.*, No. C-12-6047 EMC, 2013 WL 2237885, at *5 (N.D. Cal. May 21, 2013) (parties clearly and unmistakably agreed to

[7] Uber acknowledges that *Mohamed* upheld its similar arbitration agreement relating to Drivers, however, the substance of the discussion is on point, and numerous other courts have agreed with the Ninth Circuit that Uber's delegation provision—which is similar to the one at issue here—clearly and unmistakably reflects an intent to delegate issues of arbitrability to the arbitrator. *See, e.g.*, *Feld v. Uber Techs. Inc.*, LASC Case No. 19STCV26766 (2020); *Harounsheily v. Uber Techs. Inc.*, LASC Case No. 19STCV05712 (2019); *Sienkaniec v. Uber Techs., Inc.*, No. 17-CV-4489 (PJS/FLN), 2017 WL 7791193 (D. Minn. Dec. 18, 2017); *Lathan v. Uber Techs., Inc.*, 266 F. Supp. 3d 1170 (E.D. Wis. 2017); *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 526 (E.D.N.Y. 2017), *recons. denied sub nom.*, *Ortega v. Uber Techs. Inc.*, No. 15CV7387NGGJO, 2017 WL 1737636 (E.D.N.Y. May 2, 2017); *Zawada v. Uber Techs., Inc.*, No. 16-cv-11334, 2016 WL 7439198 (E.D. Mich. Dec. 27, 2016), *aff'd*, 2018 WL 1313603 (Mar. 14, 2018); *Micheletti v. Uber Techs., Inc.*, 213 F. Supp. 3d 839 (W.D. Tex. 2016); *Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886 (N.D. Ill. 2016); *Bruster v. Uber Techs., Inc.*, 188 F. Supp. 3d 658 (N.D. Ohio. 2016), *recons. denied*, 2016 WL 4086786 (N.D. Ohio Aug. 2, 2016); *Rimel v. Uber Techs., Inc.*, No. 6:15-cv-2191-Orl-41KRS, 2016 WL 6246812 (M.D. Fla. Aug. 4, 2016); *Sena v. Uber Techs. Inc.*, No. CV-15-02418-PHX-DLR, 2016 WL 1376445 (D. Ariz. Apr. 7, 2016), *recons. denied*, 2016 WL 4064584 (D. Ariz. May 03, 2016).

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

9.

(Case No. 4:20-cv-02698-YGR)

MPAS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

delegate arbitrability to arbitrator where provision delegated to the arbitrator all issues regarding the "interpretation, application, formation, enforcement, or validity of this memorandum . . . including any question as to [the dispute's] arbitrability" (emphasis omitted)); *Anderson v. Pitney Bowes, Inc.*, No. C 04-4808 SBA, 2005 WL 1048700, at *3 (N.D. Cal. May 4, 2005) (same as to provision delegating to the arbitrator all disputes regarding the "interpretation, applicability, or enforceability or formation of th[e] Agreement, including . . . any claim that all or any part of th[e] Agreement is void or voidable"). The Court should reach the same conclusion here.

By incorporating the AAA Consumer Arbitration Rules, the Arbitration Agreement underscores the parties' delegation of gateway issues of arbitrability.[8] *See* Barajas Decl. ¶ 15, Ex. G, § 2 ("Rules and Governing Law"). In *Brennan*, the Ninth Circuit held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." 796 F.3d at 1130. *Brennan* involved two commercial parties, but courts have extended its holding to delegation clauses in consumer contracts, including to an earlier version of Uber's Terms. *See Cubria*, 242 F. Supp. 3d at 548; *Cordas*, 228 F. Supp. 3d at 992 ("clear weight of authority" supports conclusion that incorporation of the AAA rules effectively delegates arbitrability regardless of the sophistication of the parties); *accord McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2017 WL 4551484, at *2 (N.D. Cal. Oct. 11, 2017) (same). Thus, because the parties unambiguously agreed to delegate arbitrability issues to the arbitrator, both through an express delegation clause and the incorporation of the AAA Rules, the Court should enforce that agreement.

### C. Even If The Court Finds That It, Rather Than The Arbitrator, Should Decide Arbitrability, Both Gateway Issues Are Satisfied.

The Court should compel arbitration even if it were to decide, contrary to the parties' delegation agreement, that it (rather than the arbitrator) should assess gateway questions of arbitrability. Where – unlike here – the parties have not contracted for arbitrability questions to be determined by the arbitrator, the Court's role under the FAA is limited to determining: (1) whether

---

[8] AAA Consumer Rule 14(a) provides, in pertinent part, that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim." AAA, Consumer Arbitration Rules at 17 (Jan. 1, 2016), https://www.adr.org/sites/default/files/Consumer%20Rules.pdf.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

10.                    (Case No. 4:20-cv-02698-YGR)

MPAS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

1  there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the

2  dispute. *See Geier v. m-Qube Inc.*, 824 F.3d 797, 799 (9th Cir. 2016) (per curiam). In conducting these

3  inquiries, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be

4  resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1,

5  24-25 (1983). Were the Court to reach this issue, both of these inquiries must be answered in the

6  affirmative.

7      **1.      Plaintiff Entered Into A Valid Agreement To Arbitrate.**

8      Plaintiff here has admitted that she agreed to Uber's Terms of Use because she filed an

9  arbitration demand and attached the Terms as the agreement to arbitrate justifying her filed demand.

10  Even apart from her admission, there can be no dispute that Plaintiff accepted Uber's Terms and

11  thereby agreed to arbitrate her disputes with Uber. The validity of an agreement to arbitrate is assessed

12  under state law. See 9 U.S.C. § 2. Under California law, mutual assent is the key to contract formation.

13  *See Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999). Consent may be manifested

14  through conduct. *Id.*; *see Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992

15  (1972) ("an offeree, knowing that an offer has been made to him but not knowing all of its terms, may

16  be held to have accepted, by his conduct, whatever terms the offer contains"). Thus, courts routinely

17  enforce online agreements where users' conduct indicates their consent to hyperlinked terms of service

18  of which they had actual or constructive notice. *See, e.g.*, *Nevarez v. Forty Niners Football Co.*, LLC,

19  No. 16-CV-07013, 2017 WL 3492110, at *6-9 (N.D. Cal. Aug. 15, 2017) (user bound by arbitration

20  provision where click buttons with language below them alerting the user that clicking such buttons

21  constituted consent to the website's terms); *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp.

22  3d 1155, 1164 (N.D. Cal. 2016) (finding assent where the user clicked a "Sign Up" box with language

23  beneath it that put him on notice that clicking the box constituted assent to the agreement); *Graf v.*

24  *Match.com, LLC*, No. CV 15-3911 PA (MRWX), 2015 WL 4263957, at *4 (C.D. Cal. July 10, 2015)

25  (enforcing arbitration provision in hyperlinked terms of use where website informed user that clicking

26  on website button affirmed consent to terms of use); *Crawford v. Beachbody, LLC*, No. 14-CV-1583

27  GPC, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (online customer who placed order was bound

28  by contract terms when website stated that "By clicking Place Order below, you are agreeing that you

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

11.                                    (Case No. 4:20-cv-02698-YGR)

MPAS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

have read and understand the Beachbody Purchase Terms and Conditions," which were hyperlinked on the same webpage).

Assent is clear here.  First, immediately above the "Sign up" button that Plaintiff had to click in order to sign up for an account or ever use Uber's Rider App, Uber advised that "[b]y signing up [the user] agree[s] to the Uber **Terms and Conditions** and **Privacy Policy**."  Barajas Decl. ¶ 8. (emphasis in original).  Plaintiff had the opportunity to click on the bolded, underlined "Terms and Conditions", indicating it was a hyperlink, to review Uber's Terms.  *Id.*  Below that sentence with hyperlinks was a checkbox next to a one-sentence notice in bold also stating, "**I agree to the Uber Terms and Conditions and Privacy Policy.**"  Barajas Decl. ¶ 9, Exs. A-B.  (Emphasis in original.) Uber's disclosures provided clear notice to Plaintiff of Uber's Terms and the fact that creating an account would constitute her consent to it.  *See Cordas*, 228 F. Supp. 3d at 990–91 (by completing sign-up process and creating an Uber account, Uber rider affirmatively assented to Uber's terms and conditions); *Meyer*, 868 F.3d at 80; *Cubria, Inc.*, 242 F. Supp. 3d at 548.  By creating her Uber account, Plaintiff thereby consented to Uber's 2012 Terms, including the Arbitration Agreement. (Barajas Decl. ¶¶ 4-10, Exs. A-D.)

Plaintiff's consent to arbitrate is also demonstrated by her continued use of the Uber Rider App after she received the November 2016 email, which contained a colored hyperlink to Uber's updated Terms and expressly highlighted a change in those Terms with respect to the Arbitration Agreement. In *West v. Uber Technologies*, the court analyzed the same November 2016 email in the context of a rider lawsuit and found assent on indistinguishable facts:

> In addition to the registration process described above, Plaintiff also received an email on November 14, 2016 informing him of updates to the Arbitration Agreement; that email stated that continued use of the App would constitute agreement to the updated Terms. [Citations omitted.] . . . The email provided a link to the updated Terms, and also explained that continued use of the App would confirm agreement to the updated Terms. [Citation omitted.]
>
> ***Plaintiff continued using the App and Uber's services for a year after receiving that email, . . . . Courts have found that when consumers receive emails such as this one, continued use of the service or product constitutes assent to the updated terms***. . . .

No. 2:18-cv-3001-PSG-GJS, ECF No. 47, at 7 (C.D. Cal. Sept. 5, 2018) (citing cases) (emphasis

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

12.

(Case No. 4:20-cv-02698-YGR)

MPAS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

added). The same result was reached in *Nielsen v. Uber Technologies*, No. BC705695 (Cal. Super. Ct. Feb. 22, 2019) (granting Uber's motion to compel arbitration) (attached to Request for Judicial Notice as **Exhibit A**).  There, the California Superior Court granted Uber's motion to compel arbitration, holding that because the plaintiff "used [Uber's] services to take four trips" after Uber sent the November 2016 email, the plaintiff "knew or should have known that her continued use of [Uber's] services would constitute acceptance of the arbitration clause in the terms and conditions." *Id*. at *6.

*West* and *Nielsen* are not alone. Courts regularly enforce agreements "where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound." *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014); *see also Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014) ("Where an employee continues in his or her employment after being given notice of the changed terms or conditions, he or she has accepted those new terms or conditions."); *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (updated terms of use enforceable where "plaintiffs accepted and agreed to the current terms by continuing to use Facebook after receiving" email notice of updated terms).

Here, Plaintiff was notified of the updates to Uber's Terms & Conditions via the November 2016 email, which instructed her to "read [the Terms of Service] fully," and provided a conspicuous hyperlink to the Terms, explaining, "you can access [the Terms] here." Barajas Decl. ¶14, Ex. F. Although not required, the email expressly referenced the Arbitration Agreement, stating that the updated terms "revise[] our arbitration agreement which explains how legal disputes are handled." *Id.* And Plaintiff was notified that "**[i]f you use our app or other services on or after [November 21, 2016], you're confirming you've read and agree to the updated Terms**." *Id.*  (Emphasis added.) Plaintiff continued to use the Uber Rider App to network rides long after November 21; in fact, she did so more than 1,000 times between November 21, 2016 and July 1, 2020. Barajas Decl. ¶ 16. Plaintiff's continued use of the Uber Rider App following receipt of the November 2016 email constitutes assent to Uber's Terms and Conditions, including the Arbitration Agreement.

### 2.    Plaintiff's Claims Are Covered By The Arbitration Agreement.

The FAA requires that courts compel arbitration "unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

13.

(Case No. 4:20-cv-02698-YGR)

MPAS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (emphasis added, citation omitted).  Here, the 2016 Arbitration Agreement extends to all claims or disputes "arising out of or relating to" the Terms or the rider's "access to or use of" the Uber Rider App.  (Barajas Decl. ¶ 15, Ex. G, §§ 2, 3.)  The Arbitration Agreement's use of the "arising out of or relating to" language should be interpreted broadly. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999); *Delgado v. Progress Fin. Co.*, No. 1:14-cv-00033-LJO-MJS, 2014 WL 1756282, at *5 (E.D. Cal. May 1, 2014) ("The use of the 'relat[ing] to' language is a signal that the scope of the agreement is broad under Ninth Circuit case law and encompasses claims beyond the four corners of the contract."). In the face of this language, "Plaintiff's claims need only 'touch matters' covered by the contract containing the arbitration provision." *Koyoc v. Progress Fin. Co.*, No. CV 13-09165-RSWL (AGRx), 2014 WL 1878903, at *4 (C.D. Cal. May 9, 2014) (citation omitted).

Plaintiff's claims fall squarely within the broad scope of the Arbitration Agreement. *See* Barajas Decl. ¶ 15, Ex. G, § 2 ("Arbitrator's Decision"). Plaintiff alleges that she was denied service by Drivers due to the presence of her service animal, and she sought rides from those Drivers via the Uber Rider App . Compl., ¶¶ 1, 42, 55-76. Thus, Plaintiff's claims unquestionably "aris[e] out of or relat[e]" to Uber's services:  the Uber Rider App. Moreover, because the agreed upon Terms contain no provision that ***excludes*** the claims from arbitration, Plaintiffs cannot overcome the presumption of arbitrability. *See Grand Wireless*, 748 F.3d at 8-9 (holding that plaintiff failed to rebut the presumption of arbitrability because it "needed to show that the parties intended to exclude this type of dispute from the scope of the arbitration clause, not merely that the arbitration clause lacked explicit language covering" the claims); *see also Harounsheily v. Uber Techs. Inc.*, LASC Case No. 19STCV05712 (Aug. 8, 2019) (granting motion to compel plaintiff's claims arising from alleged denial of service based on her disability to arbitration). In addition, statutory and contract claims—like those Plaintiff asserts—related to the subject of the arbitration provision (here, Uber's services), are governed by that same provision. *See, e.g.*, *Cruise v. Kroger Co.*, 233 Cal. App. 4th 390, 396-97 (2015) (compelling arbitration of statutory claims even when arising from dispute regarding employment). In short, whether determined by the Court or an arbitrator, the arbitration provision here is broad enough to encompass Plaintiff's claims and Plaintiff should be compelled to arbitrate.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

14.

(Case No. 4:20-cv-02698-YGR)

MPAS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

### 3.     The Arbitration Agreement Is Not Unconscionable.

Plaintiff cannot avoid the Arbitration Agreement she entered into with Uber by claiming that the agreement is unconscionable. "The party resisting arbitration bears the burden of proving unconscionability." (*Pinnacle Museum Tower Ass'n v. Pinnacle Mktg. Dev. (US), LLC* (2012) 55 Cal.4th 223, 247.) "[P]rocedural and substantive unconscionability must *both* be present" to permit a court "to refuse to enforce a contract." *Sanchez v. Valencia Holding Co., LLC* 61 Cal. 4th 899, 820 (2015) (internal citation omitted). Uber's 2016 Terms and Arbitration Agreement are consumer friendly and cost effective, and Plaintiff cannot meet this burden.

The Arbitration Agreement is not procedurally unconscionable because (1) it is not oppressive and (2) Plaintiff was not surprised by it. *Pinnacle Museum*, 55 Cal. 4th at 246. Plaintiff had a meaningful choice whether to accept the Terms and take advantage of the Uber Rider App—she could have easily declined those terms and used an alternative means of networking trips via the Lyft App, hailing taxi, and/or using public transportation. *See Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1245 (2007) ("The availability of alternative sources from which to obtain the desired service defeats any claim of oppression, because the consumer has a meaningful choice.").

Nor did the provision "surprise" Plaintiff. When Plaintiff signed up for an account, the 2012 Terms containing the Arbitration Agreement were prominently called out and hyperlinked on the account sign-up page and were readily accessible to Plaintiff.  Barajas Decl. ¶¶ 5-10, Exs. A-B.  Nor could Plaintiff claim surprise after Uber sent her updated Terms in November 2016. Uber "was under no obligation to highlight the arbitration clause of its contract, nor was it required to specifically call that clause to [Plaintiff's] attention." *Sanchez*, 61 Cal. 4th at 914.  Notwithstanding, Uber did just that in its November 2016 email to Plaintiff, specifically calling out the Arbitration Agreement as a "key highlight" and hyperlinking the updated Terms.  Barajas Decl., ¶14, Ex. F.  Moreover, the Arbitration Agreement is written in plain English and is conspicuously displayed under the large heading "Arbitration Agreement"—not "hidden within a prolix printed form." Barajas Decl. ¶ 15, Ex. G; *Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527, 1539 (2003); *see Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 179 (2015) ("any procedural unconscionability is 'limited'" where arbitration provision is highlighted).  Under this heading, the 2016 Terms clearly state in bold: "**By agreeing to**

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

1    **the Terms, you agree that you are required to resolve any claim that you may have against Uber**

2    **on an individual basis in arbitration . . . .**” Barajas Decl. ¶ 15, Ex. G (emphasis in original).

3    The Arbitration Agreement is also not substantively unconscionable. To prove substantive

4    unconscionability, Plaintiff must show that the arbitration clause is “so one-sided as to shock the

5    conscience.” *Pinnacle Museum*, 55 Cal. 4th at 246 (internal quotation marks and citation omitted). Far

6    from being one-sided, the Arbitration Agreement is bilateral and safeguards Plaintiff’s ability to

7    pursue a small claims action or an individual arbitration. Barajas Decl. ¶ 15, Ex. G. It also includes

8    cost terms that benefit Plaintiff. Indeed, Uber has agreed to pay all of Plaintiff’s “filing, administrative

9    and arbitrator fees” for arbitration of non-frivolous claims under $75,000. *Id.* And, Plaintiff is not

10   faced with significant travel expenses because Uber has agreed to conduct the arbitration in Plaintiff’s

11   home county. *Id*. These provisions defeat any claimed unconscionability. *See, e.g.*, *Ulbrich v.*

12   *Overstock.com, Inc.*, 887 F. Supp. 2d 924, 933-34 (N.D. Cal. 2012) (rejecting unconscionability

13   challenge even where arbitration provision required individuals to share in costs of arbitration, set the

14   arbitration out-of-state, and lacked mutuality in the remedies available to the parties).

15       **D.    Plaintiff Cannot Avoid The Arbitration Agreement Simply Because Uber Briefly**
         **And Inadvertently Made Late Payments On Invoices From Two Unrelated Cases.**

16

17   Plaintiff’s Complaint suggests that she may try to avoid enforcement of the Arbitration

18   Agreement by arguing either that Uber waived its right to enforce the Arbitration Agreement or that

19   Uber somehow breached the Arbitration Agreement by virtue of the AAA’s April 18 Letter or the

20   events leading up to that Letter. *See* Compl., ¶¶52-53. Such arguments would fail.

21   First, as discussed in Section IV.B. above, any threshold concerns about waiver or breach of

22   the Arbitration Agreement are for the arbitrator—not this Court—to decide, as Plaintiff agreed to

23   delegate “all threshold arbitrability issues,” including waiver, to the arbitrator. *See* Barajas Decl., ¶

24   15, Ex. G, § 2; *see also Mohamed*, 836 F.3d at 1108 ( holding “all of Plaintiffs’ challenges to the

25   enforceability of the arbitration agreement, save [plaintiff’s] challenge to the enforceability of the

26   PAGA waiver in the 2013 Agreement, should have been adjudicated in the first instance by an

27   arbitrator and not in court.”); *see also Cordas*, 228 F. Supp. 3d at 992 (ing “the clear weight of authority

28   supports the conclusion Uber’s terms and conditions provide clear and unmistakable evidence of the

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

16.

(Case No. 4:20-cv-02698-YGR)

MPAS IN SUPPORT OF DEFENDANTS’ MOTION TO COMPEL ARBITRATION

parties' intent to delegate questions of arbitrability to an arbitrator, and [the plaintiff] has advanced no persuasive argument to the contrary"); *Feld v. Uber Techs. Inc.*, LASC Case No. 19STCV26766, April 17, 2020 Minute Order (finding "that the arbitrator has the clearly delegated authority 'to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable.'") (attached to Request for Judicial Notice as **Exhibit B**).

These cases apply with equal force here, requiring Plaintiff to present any issue concerning waiver or breach of contract to the arbitrator in the first instance. The AAA informed the parties it is prepared to adjudicate this case. *See* Jackson Decl., ¶10, Ex. D. Thus, there is no barrier to Plaintiff asserting her objections to arbitrability based on Uber's conduct *to the arbitrator*.

Second, even if Plaintiff had not agreed to delegate threshold issues to the arbitrator, she cannot avoid enforcement of the Arbitration Agreement based on the AAA's April 18, 2020 Letter to the Parties declining to administer the case based on inadvertent issues unrelated to this matter. In the context of one party's non-payment of arbitration filing fees, courts in the Ninth Circuit have declined to enforce an arbitration agreement when either (a) one party to the agreement affirmatively refuses to participate in arbitration, or (b) the arbitral forum has conclusively refused a case because a party has failed to pay its filing fee in that case. *See Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1013 (9th Cir. 2005) (declining to enforce arbitration agreement where Defendant affirmatively refused to arbitrate Plaintiff's claim after immediate and repeated notice over two months of Plaintiff's intent to arbitrate, and finding, under those circumstances, Plaintiff had no choice but to file in court); *Sink v. Aden Enters.*, 352 F.3d 1197, 1198 (9th Cir. 2003) (declining to send parties back to arbitration where defendant did not pay fee by deadline nor after notice from the plaintiff that it would seek a default award if Defendant did not pay the required fees within two weeks).

In stark contrast to these cases, Uber did not actively refuse to participate in Plaintiff's filed arbitration, nor did Uber fail to pay its fees for the matter Plaintiff filed with the AAA. In fact, the AAA never *asked* Uber to pay any fees related to Plaintiff's Demand because it closed the case before Uber was even served with, or otherwise made aware of, the Demand. Jackson Decl., ¶¶ 3-5, 12. AAA closed the case due to inadvertent administrative payment errors resulting from two entirely

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

17.

(Case No. 4:20-cv-02698-YGR)

MPAS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

1  unrelated matters, which Uber promptly remedied days after learning about it through the AAA's April

2  18, 2020 correspondence.  *Id.*, ¶¶ 6-7.  Uber never had any intention of waiving its right to arbitrate

3  nor cause prejudice to Plaintiff.  *Id.* ¶ 13.  Uber then notified Plaintiff and the AAA that it is prepared

4  to arbitrate Plaintiff's claims.  *Id.*, ¶¶ 10-11.  And, AAA agreed to administer the case once Plaintiff

5  re-filed the Demand.  *Id.*, ¶ 10, Ex. D.

6          Uber has not breached its obligations with respect to Plaintiff, nor waived its rights, much less

7  materially so.[9]  Moreover, unlike in *Sink*, where the AAA issued a default against the defendant, the

8  AAA in this case expressly informed the parties that the case can proceed in that agreed upon forum

9  as soon as Plaintiff re-files her demand.  This is not a circumstance wherein Plaintiff is being denied

10  the arbitration forum and had "no choice but to come to court."  Rather, Plaintiff could and should

11  have reinitiated the arbitration process more than two months ago after the administrative and

12  inadvertent error concerning unrelated cases was resolved.  In short, Plaintiff cannot escape her

13  obligations under the Arbitration Agreement solely because of the AAA's April 18 Letter or its

14  temporary declination.[10]

15  **V.      CONCLUSION**

16          Plaintiff cannot escape her agreement to arbitrate this dispute with Uber.  An enforceable

17  Arbitration Agreement exists and covers the dispute at issue here. The Court should therefore order

18  Plaintiff to arbitrate all of her claims against Uber and stay Plaintiff's claims pending the outcome of

19  arbitration.

---

[9] Plaintiff also cannot claim to have been prejudiced by the 12-day period between Uber learning about the payment issues set forth in the April 18, 2020 AAA Letter and Uber's resolution of the issue on April 30, 2020. The AAA has unambiguously informed the parties that it will administer the case if Plaintiff re-files her demand, and it is *Plaintiff* who decided to prolong the delay in administering her case by refusing to allow the AAA to re-open the arbitration. Moreover, Plaintiff filed her federal Complaint before even serving Uber with her AAA Demand.

[10] Uber respectfully requests that the Court stay further proceedings pending arbitration pursuant to FAA section 3. 9 U.S.C. § 3; *Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (courts have discretion to stay or dismiss actions compelled to arbitration).

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

18.          (Case No. 4:20-cv-02698-YGR)

MPAS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

1    Dated:        July 17, 2020

2

3                                                              /s/ Andrew M. Spurchise
                                                            ANDREW M. SPURCHISE
4                                                          LITTLER MENDELSON, P.C.
                                                          Attorney for Defendants
5                                                          UBER TECHNOLOGIES, INC., RASIER,
                                                          LLC and RASIER-CA, LLC
6

7

8    4827-0902-4706.3 073208.1995

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

MPAS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION