Adam B. Wolf, Bar No. 215914
Catherine Cabalo, Bar No. 248198
Tracey B. Cowan, Bar No. 250053
PEIFFER WOLF CARR KANE & CONWAY
A Professional Law Corporation
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone:    415.766.3592
Facsimile:    415.402.0058
Email:        awolf@peifferwolf.com
              ccabalo@peifferwolf.com
              tcowan@peifferwolf.com

Attorneys for Plaintiff LUCIA GRECO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LUCIA GRECO,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.; RASIER, LLC; and RASIER-CA, LLC,<br><br>Defendants. | Case No.  4:20-cv-02698-YGR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Date:          September 8, 2020<br>Time:          2:00 p.m.<br>Judge:         Hon. Yvonne Gonzalez Rogers<br>Location:      1301 Clay Street, Ctrm. 1, 4th Fl.<br><br>Complaint Filed:  April 19, 2020 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     RELEVANT BACKGROUND ............................................................................. 1

        A.      Formation of the Alleged Arbitration Agreement ........................................... 2

        B.      The Terms of the Arbitration Agreement ....................................................... 2

        C.      Ms. Greco's Filing with the AAA.................................................................. 3

III.    LEGAL STANDARD............................................................................................ 4

IV.     ARGUMENT .......................................................................................................... 5

        A.      Ms. Greco Should Not Be Compelled to Return to the AAA Because She Did Not Fail,

                Neglect, or Refuse to Participate in Arbitration.............................................. 5

        B.      Defendants Are Not Entitled to a Stay Because the Arbitration "Has Been Has in

                Accordance With the Terms of the Agreement.".............................................. 6

        C.      Uber is Not Entitled to a Stay or to Compel Arbitration Because It Defaulted on the

                Arbitration Agreement. ................................................................................. 9

                1.     The AAA Already Decided The Issue of Default.................................... 10

                2.     The Issue Of Uber's Default Would Properly Be Before This Court If It Had Not

                       Been Decided Already By the AAA. ....................................................... 10

V.      CONCLUSION...................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Adame v. Ally Fin., Inc.*, Case No. 2:17-cv-01654-SVW-KS, 2017 U.S. Dist. LEXIS 135479
(C.D. Cal. 2014)...............................................................................................................6

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996 (9th Cir. 2010) .................4

*Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114 (9th Cir. 2008).................................................4

*County of Middlesex v. Gevyn Constr. Corp.*, 450 F.2d 53 n.2 (1st Cir. 1971)...................................9

*Freeman v. SmartPay Leasing, LLC*, 771 Fed. Appx. 926 (11th Cir. 2019)....................................10

*Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309 n.17 (11th Cir. 2002).......................................9

*Lemmons v. Ace Hardware Corp.*, Case No. 12-cv-03936-JST, 2014 U.S. Dist. LEXIS 91347
(N.D. Cal. 2014).............................................................................................................6

*Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1 n.10 (1st Cir. 2005) ......................................9, 11

*McArdle v. AT&T Mobility LLC*, Case No. C 09-1117 CW, 2013 U.S. Dist. LEXIS 137897
(N.D. Cal. 2013).............................................................................................................4

*MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244 (4th Cir. 2001);..................................................9

*Nat'l Fed'n of the Blind of Cal. v. Uber Techs., Inc.*, Case No. 14-cv-04086-NC, 2016 U.S. Dist.
LEXIS 192176, (N.D. Cal. 2016) ......................................................................................2

*Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562 n.8 (N.D. Cal. 2018)............................6

*Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287 (10th Cir. 2015) .....................................*passim*

*Rapaport v. Soffer*, 2011 U.S. Dist. LEXIS 51257, 2011 WL 1827147 (D. Nev. 2011)...................10

*Sink v. Aden Enters.*, 352 F.3d 1197 (9th Cir. 2005) ............................................................9, 11

*Tillman v. Tillman*, 825 F.3d 1069 (9th Cir. 2016)..............................................................7, 8

**Statutes**

9 U.S.C. § 3 ..............................................................................................................*passim*

9 U.S.C. § 4 ....................................................................................................................5

## I.     INTRODUCTION

Plaintiff Lucia Greco ("Plaintiff" or "Ms. Greco") brought this action because Defendants (collectively, "Uber" or "Defendants") have repeatedly denied her access to their rideshare services in violation of Title III of the Americans with Disabilities Act ("ADA") and the Unruh Civil Rights Act ("Unruh Act"). Defendants now seek to compel arbitration of Plaintiff's claims pursuant to an arbitration agreement (the "Agreement"), despite their failure to abide by the agreement's terms.

Uber carefully drafted the terms of its Agreement, selecting the American Arbitration Association ("AAA") as its preferred forum and incorporating by reference the AAA's Consumer Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "AAA Rules"). Despite contesting the application of the agreement, Ms. Greco nevertheless complied with its terms by filing this action first in the AAA and proceeding in good faith to resolve her disputes with Uber in that forum. After the case had been filed, however, the AAA informed the parties that it was refusing to administer Ms. Greco's claim on the basis that Uber had failed to comply with the AAA Rules. Under the relevant provisions of the FAA, once the AAA administratively closed Ms. Greco's arbitration—due to Uber's conduct—and advised the parties of their rights to submit their dispute to the appropriate court for resolution, Ms. Greco was and remains entitled to pursue her claims in this Court. In short, Uber had its chance to arbitrate this action but lost that right when it failed to uphold its obligations. Accordingly, Defendants' Motion to Compel Arbitration (ECF 21, hereinafter the "Motion") must be denied.

## II.     RELEVANT BACKGROUND

Ms. Greco is visually impaired. Declaration of Lucia Greco ("Greco Decl.") ¶ 3. She uses a guide dog to travel safely and independently. *Id.* Due to her visual impairment, Ms. Greco cannot drive and must rely on public transportation, taxis, and rideshare taxi services such as that provided by Defendants. *Id.* ¶ 4. When she books rides through Uber's rideshare application (the "Uber App"), however, she is repeatedly denied service because Uber drivers illegally refuse to allow her guide dog in their vehicles. *Id.* ¶ 5.

### A. Formation of the Alleged Arbitration Agreement

Uber claims it had an arbitration agreement with Ms. Greco due to her alleged acceptance of the Terms and Conditions when she registered for use of the Uber App. In fact, Ms. Greco was unable to access the Terms and Conditions at the time she registered. Plaintiff uses screen-reading technology to translate text on her mobile phone and computer to be read out loud to her. *Id.* ¶ 6. She is unable to access any programs or applications on her mobile phone or computer unless the programs and applications were created to be accessible to visually disabled users (*i.e.*, can be read by screen-reading technology). *Id.* When Ms. Greco signed up for the Uber App in 2013, she could not access or read Uber's "Terms and Conditions" and much of the sign-up process, because several screens on the Uber App were inaccessible to her mobile phone screen reader. *Id.* ¶ 7.

Additionally, despite Uber's representations that Ms. Greco was supposedly sent an email in November 2016 alerting her of an update to its Terms and Conditions,[1] she is certain that she never received any such email. *Id.* ¶ 8. After signing up for the Uber App, Ms. Greco created an email filter that would direct all incoming emails from Uber to a specific file in her email inbox. *Id.* With the exception of advertisements (*i.e.*, deals on rides or special services from 3rd party vendors), she has kept all emails from Uber. *Id.* Additionally, because of her involvement as a witness in the *Nat'l Fed'n of the Blind of Cal. v. Uber Techs., Inc.*, Case No. 14-cv-04086-NC, 2016 U.S. Dist. LEXIS 192176, (N.D. Cal. 2016) case ("NFB case"), she had a specific reason to keep careful track of any emails from Uber. *Id.* Her Uber email file reveals that she did not receive any email from Uber in November 2016 regarding alleged updates to its Terms and Conditions. *Id.*

Although she did not have independent knowledge of Uber's Terms and Conditions, Ms. Greco acknowledges that she learned of the Terms and Conditions and the arbitration provision contained in them through the NFB case and her undersigned counsel. *Id.* ¶ 9.

### B. The Terms of the Arbitration Agreement

By Uber's own crafting, the AAA Rules are specifically incorporated into both versions of the Terms and Conditions that Uber claims Ms. Greco agreed to. *See* ECF 24-5 at 9 (September 14,

---

[1] Notably, Uber has failed to produce the alleged email itself or any record confirming it was sent, instead relying on an exemplar email that was sent to someone else. ECF 24 ¶ 14; ECF 24-6.

2012 Terms and Conditions, hereinafter "2012 TAC") (stipulating arbitrations "will be administered" by the AAA in accordance with the AAA Rules); ECF 24-7 at 3 (November 21, 2016 Terms and Conditions, hereinafter "2016 TAC") (same).

The AAA Rules allow the AAA flexibility in how it charges parties for its services and how to proceed in the event of a party's nonpayment. Declaration of Catherine Cabalo ("Cabalo Decl.") Exh. A (AAA Consumer Arbitration Rules). For example, AAA Rule 54(d) authorizes the arbitrator to terminate proceedings for non-payment of arbitrator compensation or AAA administrative fees. *Id*. at pg. 32. Defendants do not challenge the AAA Rules or their application in Ms. Greco's case – in fact, they argue throughout their Motion for their enforcement as part of the Agreement. Motion at 5:14-20 & 4 n.3.

### C.  Ms. Greco's Filing with the AAA

On March 27, 2020, Ms. Greco filed a Demand for Arbitration with the AAA for damages against Defendants, in compliance with the directives of the arbitration provision. Greco Decl. ¶ 10; Cabalo Decl. ¶ 2. Approximately three weeks later, Ms. Greco received a letter from the AAA via email dated April 18, 2020, informing her that the AAA was declining to administer her claim because Uber had failed to comply with the AAA's policies:

> Prior to the filing of this arbitration, **Uber Technologies, Inc. failed to comply with the AAA's policies regarding consumer claims**. **Accordingly, we must decline to administer this claim** and any other claims between Uber Technologies, Inc. and its consumers at this time.
>
> [ . . . ]
>
> Accordingly, we have administratively closed our file and will refund any payment received by the filing party. According to R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, ***either party may choose to submit its dispute to the appropriate court for resolution***.
>
> [ . . . ]
>
> [I]f Uber Technologies, Inc. wishes for the AAA to consider accepting consumer disputes going forward, Uber Technologies, Inc. must, at a minimum, register its clause on the Consumer Clause Registry on our website, www.adr.org/clauseregistry. Upon completion of the registration process and confirmation from the AAA that Uber Technologies, Inc. is now active on the Consumer Clause Registry, Uber Technologies, Inc. is responsible for informing all parties that

Claimant may re-file their claim.

Cabalo Decl. Exh. B (also filed as ECF 1-1) (italicized boldface emphasis and brackets added) (hereinafter "4/18/20 AAA Ltr."). In accordance with this communication from the arbitral forum of Uber's choosing, Ms. Greco promptly filed the instant action. *See* Complaint (ECF 1).

The AAA sent another letter on April 30, 2020, alerting the parties that Uber had addressed its noncompliance with the AAA's rules and policies, so it would be reinstated to the AAA's Consumer Clause Registry ("Registry") and the AAA would accept Uber's consumer cases filed *from April 30th going forward*. ECF 23-4 ("4/30/20 AAA Ltr."). However, the AAA specifically refused to reopen Ms. Greco's case unless both parties agreed to reopen the matter, a court directs the AAA to do so, or Ms. Greco refiles her case. *Id.* The AAA concluded, "[o]therwise, the case will remain closed as stated in our letter of April 18, 2020." *Id.*

### III.    LEGAL STANDARD

The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (superseded by statute on other grounds as stated in *McArdle v. AT&T Mobility LLC*, Case No. C 09-1117 CW, 2013 U.S. Dist. LEXIS 137897 at *12-*13 (N.D. Cal. 2013)). To determine whether to compel arbitration, a district court's involvement is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). Uber bears the burden to demonstrate it satisfies this test. *Id.*

Section 3 of the FAA requires courts to stay court proceedings "until such arbitration *has been had in accordance with the terms of the agreement*, providing the *applicant for the stay is not in default* in proceeding with such arbitration," 9 U.S.C. § 3 (emphases added).

Section 4 of the FAA, which governs petitions to compel arbitration, provides in relevant part:

> A party aggrieved by the alleged *failure, neglect, or refusal* of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the

controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (emphasis added).

"[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. But "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." *Id.*

## IV.    ARGUMENT

Defendants request this Court compel arbitration pursuant to FAA section 4, Motion at 8:20-22; 18:17-19, and stay further proceedings in this case pending arbitration pursuant to FAA section 3, *id.* at 18 n.10. However, Defendants are not entitled to compel arbitration under the FAA because Ms. Greco did not fail, neglect, or refuse to participate in arbitration. Additionally, Defendants are not entitled to a stay because the arbitration with the AAA "has been had in accordance with the terms of the agreement" and because Uber defaulted on the Agreement by not abiding by the AAA Rules at the time of Ms. Greco's filing and not rectifying their violations prior to AAA's closing the case.

### A.    Ms. Greco Should Not Be Compelled to Return to the AAA Because She Did Not Fail, Neglect, or Refuse to Participate in Arbitration.

Defendants cannot compel arbitration because Ms. Greco plainly did not fail, neglect, or refuse to arbitrate. 9 U.S.C. § 4. Ms. Greco filed her claim with the AAA in good faith and with the full intention of proceeding with arbitration. Greco Decl. ¶ 10. By no fault of her own, Ms. Greco was left without any resolution of her claims against Uber when the AAA recognized that Ms. Greco attempted to arbitrate her claims, but refused to administer those claims because of Uber's failure to abide by the AAA's rules.

Defendants' insistence that Ms. Greco need only re-file with the AAA because "[t]his is not a circumstance wherein Plaintiff is being denied the arbitration forum and had 'no choice but to come to court,'" Motion at 18:6-14, completely misses the point – the onus is not on Ms. Greco to fix the problems created by Uber's default. *See Adame v. Ally Fin., Inc.*, Case No. 2:17-cv-01654-SVW-KS,

2017 U.S. Dist. LEXIS 135479 at *4 (C.D. Cal. 2014) ("Based on AAA's refusal to hear this claim, Plaintiff exercises her right to litigate the dispute under the very rules Defendant asks this Court to follow. Even though she still has the option to refile the dispute with the AAA, the rules of the AAA allow her to file with this Court and continue litigation in this Court accordingly."). Once the AAA determined that it would not further administer Ms. Greco's claims against Uber—despite Ms. Greco's attempts to arbitrate—Ms. Greco was free to follow the AAA's ruling and file her claims here.

Moreover, Ms. Greco was not required at that point to wait indefinitely for Uber to pay its outstanding bill(s) with the AAA. At the time of the AAA's April 18th letter closing the case, she had no idea exactly which of AAA's rules that Uber was not complying with, how long it would take Uber to respond to the AAA's letter, or if Uber would respond at all. Once the AAA dismissed her claims for Uber's conduct, Ms. Greco was allowed to file her claims in this forum.

Finally, forcing Ms. Greco to refile her claim after receiving the April 30, 20202 notice from the AAA would have unreasonably prejudiced her. Had Ms. Greco refiled her claim at this time, she would have lost one of her claimed denials of service (dated March 28, 2018), due to the two-year statute of limitation for claims under California's Unruh Civil Rights Act ("Unruh Act"). *See Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 574, n.8 (N.D. Cal. 2018); *Lemmons v. Ace Hardware Corp.*, Case No. 12-cv-03936-JST, 2014 U.S. Dist. LEXIS 91347 at *42-*44 (N.D. Cal. 2014).

For the forgoing reasons, Defendants are not entitled to compel arbitration, and Ms. Greco's claims should proceed in this Court.

**B. Defendants Are Not Entitled to a Stay Because the Arbitration "Has Been Has in Accordance With the Terms of the Agreement."**

Defendants' request that this Court stay Ms. Greco's action should also be denied, because Ms. Greco initiated arbitration with the AAA and complied with the Agreement and the AAA Rules as long as she was able to before the AAA closed its file on her case. Forcing her to re-file with the AAA would constitute a second arbitration attempt, which is not required by the Agreement. *See* 2012 TAC, 2016 TAC.

1    Both the Ninth and Tenth Circuits have held that an arbitration "has been had" in accordance

2 with the terms of an arbitration agreement, as contemplated by Section 3 of the FAA, if the

3 arbitration proceeding was terminated because of a party's failure to pay arbitration fees. *Tillman v.*

4 *Tillman*, 825 F.3d 1069, 1073-74 (9th Cir. 2016); *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d

5 1287, 1293-94 (10th Cir. 2015). In both cases, the appellate courts held that the respective district

6 courts properly lifted stays initially issued under Section 3 of the FAA. *Tillman*, 825 F.3d at 1074;

7 *Cahill*, 786 F.3d at 1299.

8    In *Cahill*, Todd Cahill was sued by his former employer, Pre-Paid Legal Services Inc. ("Pre-

9 Paid"), for violating the terms of his employment agreement, which included a mandatory arbitration

10 provision. 786 F.3d at 1288. Mr. Cahill moved to stay district court proceedings pending arbitration.

11 Pre-Paid did not object, the district court granted the stay, and Pre-Paid initiated arbitration with the

12 AAA. *Id.* at 1288. Pre-Paid paid its share of arbitration fees, but Mr. Cahill did not. *Id.* The AAA

13 panel suspended the arbitration and issued several notices that they would suspend the arbitration if

14 the parties did not complete payment. *Id.* at 1289. Mr. Cahill did not pay his portion of the

15 arbitration fees, Pre-Paid declined to pay Mr. Cahill's share of the fees, and the AAA ultimately

16 terminated the arbitration proceeding and closed its file because of nonpayment. *Id.* at 1288-89. Pre-

17 Paid moved to lift the stay of the district court proceedings, which the district court granted, despite

18 Mr. Cahill's objections. *Id.*

19    Although the arbitration had not reached a merits determination, the Tenth Circuit affirmed

20 the district court's lifting of the stay, holding that when the AAA terminates an arbitration in

21 accordance with the AAA Rules, the arbitration has "been had in accordance with the terms of the

22 agreement" under Section 3 of the AAA, thus "removing the § 3 requirement for the district court to

23 stay the proceedings." *Id.* at 1294. The *Cahill* Court noted that the AAA determined the arbitration

24 had gone as far as it could due to Mr. Cahill's repeated refusal to pay the fees, and under the AAA

25 rules, the panel terminated the proceedings. *Id.*

26    Similarly, in *Tillman*, the Ninth Circuit affirmed a district court's lifting of a stay of a legal

27 malpractice case where the arbitrator terminated arbitration proceedings without entering judgment

28 because one party ran out of funds to pay for its share for the arbitration. 825 F.3d at 1073-74.

Following the Defendant's successful motion to compel arbitration and stay of the district court action, the parties in *Tillman* proceeded to arbitrate the case under the AAA's rules. *Id*. at 1072. However, the arbitrator terminated the arbitration because Ms. Tillman was unable to pay her share of the final deposit to proceed to the arbitration hearing. *Id*. Upon motion by the firm, the district court lifted the stay and dismissed Ms. Tillman's complaint *Id.* at 1072-73.

The Ninth Circuit affirmed the district court's lifting of the stay and reversed dismissal of the claim. *Id.* at 1073-74. Noting that the parties' arbitration agreement explicitly incorporated the AAA's rules, the *Tillman* court concluded that all the steps outlined in the AAA's rules had been followed, including terminating the proceedings without issuance of an award, and the district properly lifted the stay because the arbitration had "been had" pursuant to the agreement between the firm and Ms. Tillman.[2] *Id.* at 1074 (citations omitted). Accordingly, even though Ms. Tillman was the party responsible for defaulting, nevertheless the Ninth Circuit held that the arbitration was held within the meaning of the agreement and permitted her claim to go forward in district court. *Id.* at 1073-74, 1076. The *Tillman* court acknowledged that "Tillman and the firm chose rules that allowed the arbitrator to terminate their arbitration in the event of non-payment without any resulting award or judgment. Tillman cooperated with those rules as long as she was able to." *Id.* at 1076.

There is little difference between *Cahill*, *Tillman*, and Ms. Greco's case. Here, Uber meticulously drafted the terms of its own arbitration agreement, and there is no question that the arbitration agreement specifically incorporates the AAA Rules. 2012 TAC at 9, 2016 TAC at 3. Despite doubts about its application to her, Ms. Greco nevertheless followed the terms of the Agreement and timely filed her statement of claim with the AAA. Cabalo Decl. ¶ 2. Subsequently, the AAA determined Ms. Greco's claim could go no further due to Uber's refusal to pay fees in

---

[2] The *Tillman* court included a footnote, that, upon first glance, could look similar to Uber's nonpayment to the AAA in Ms. Greco's case: "A question may arise in such circumstances as to whether an arbitration 'has been had in accordance with the terms of the agreement,' 9 U.S.C. § 3, when it has been terminated due to the nonpayment of a party who has the ability to pay but simply chooses not to." 825 F.3d at 1075 n.1. The footnote goes on to say that "it may be contrary to 'the structure and purpose of the FAA' to allow a party to an arbitration agreement to benefit from their intentional noncompliance with an arbitrator's rules." *Id.* (quoting *Sink v. Aden Enters.*, 352 F.3d 1197, 1200 (9th Cir. 2003)). The *Tillman* footnote is clearly distinguishable from Ms. Greco's case because it contemplates a party purposefully refusing to pay arbitration fees to avoid arbitration. *Id.* That is of course the opposite of what happened here.

1   cases it had with the AAA and dismissed Ms. Greco's case of its own volition and in accordance

2   with the discretion granted by the AAA Rules. Cabalo Decl. Exhs. B & A at pg. 32 (AAA Rule 54).

3          There is no question that the AAA terminated Ms. Greco's claim and that AAA did not

4   consider her claim "pending" any further. It closed its file and specifically noted that "either party

5   may choose to submit its dispute to the appropriate court for resolution." Cabalo Decl. Exh. B. It

6   also apparently took Uber off its Registry. ECF 23-4 (4/30/20 AAA Ltr., in which the AAA

7   referenced Uber's "reinstatement to the Registry"). Although subsequent correspondence from the

8   AAA indicates that it will consider administration of Ms. Greco's claim if she *re-files*,[3] ECF 23-4

9   (4/30/20 AAA Ltr.), the ability to return the AAA to file another claim has no bearing on the fact

10  that the arbitration in Ms. Greco's first attempt "ha[d] been had in accordance with the terms of the

11  agreement," as contemplated by 9 U.S.C. § 3. Therefore, Uber is ineligible for a stay under Section 3

12  and must face the consequences of its failure to abide by the rules of its self-selected arbitral forum.

13      **C.  Uber is Not Entitled to a Stay or to Compel Arbitration Because It Defaulted on the**

14          **Arbitration Agreement.**

15          Even if this Court does not agree that the arbitration "has been had in accordance with the

16  terms of the agreement" (*i.e.*, the arbitration process was commenced and completed pursuant to the

17  terms of the Agreement and the AAA Rules), Uber is nevertheless not entitled to stay this action

18  because it defaulted on the Agreement and waived its right to arbitration.[4] Section 3 of the FAA

19  specifically provides that a stay shall not be granted if the applicant is in default in proceeding with

20  such arbitration. 9 U.S.C. § 3. The Ninth Circuit has clearly held that a failure to pay arbitration fees

21  constitutes a default of the arbitration agreement. *See Sink v. Aden Enters.*, 352 F.3d 1197, 1199-

22  1200 (9th Cir. 2005); *see also Cahill*, 786 F.3d at 1294-95; *Freeman v. SmartPay Leasing, LLC*, 771

---

[3] Again, as noted above in Section IV.A., Ms. Greco would lose one of her claimed ride denials if she is forced to refile her claim with the AAA because of the two-year statute of limitation for Unruh Act claims.

[4] A "default" under 9. U.S.C. § 3 has generally been viewed by courts as including a "waiver." *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 13 (1st Cir. 2005) (citing *Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.*, 380 F.3d 200, 204-05 (4th Cir. 2004)); *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1316 n.17 (11th Cir. 2002); *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001); *County of Middlesex v. Gevyn Constr. Corp.*, 450 F.2d 53, 56 n.2 (1st Cir. 1971) (only waiver due to the pursuit of legal remedy inconsistent with arbitration is a "default" under 9 U.S.C. § 3)). Therefore, for the purposes of this section, Ms. Greco treats a "default" the same as "waiver."

Fed. Appx. 926, 932-33 (11th Cir. 2019); *Rapaport v. Soffer*, 2011 U.S. Dist. LEXIS 51257 at *4-*5, 2011 WL 1827147 (D. Nev. 2011). Uber admits that it did not keep current on its payments in other cases being administered by the AAA. Motion at 17:28-18:2. Therefore, it defaulted in Ms. Greco's case (as determined by the AAA), and it is precluded from compelling arbitration because it "failed to comply with the AAA's policies regarding consumer claims." Cabalo Decl. Exh. B (4/18/20 AAA Ltr.).

### 1.   The AAA Already Decided the Issue of Default.

Uber argues that any issues related to its default of the arbitration agreement is a "gateway" or "threshold" question that is not properly before this Court and should be reserved for the arbitrator. Motion at 8:19-10:19 and 16:15-17:6. However, the AAA already decided the issue of default when it refused to administer Ms. Greco's claims. Moreover, default can be determined by the record alone and does not require a formal finding of default or default order from the arbitrator. *Cahill*, 786 F.3d at 1296 (citing *Rapaport*, 2011 U.S. Dist. LEXIS 51257 at *6, 2011 WL 1827147 at *2).

In *Cahill*, the Tenth Circuit looked to the record for evidence of default, and observed: "[r]ather than alter the payment schedule, order Pre-Paid to pay Mr. Cahill's share, or relieve Mr. Cahill of his obligation to pay, the arbitrators first suspended and then terminated the proceedings and closed the case. As the district court found, this termination constituted a finding of default because it was the result of Mr. Cahill's failure to pay." 786 F.3d at 1298.

In Ms. Greco's case, the AAA declined to administer Ms. Greco's claims, noted that "either party may choose to submit its dispute to the appropriate court for resolution," alerted Uber it was not going to administer any other claims between Uber and its consumers, and closed its file in Ms. Greco's case. Cabalo Decl. Exh. B (4/18/20 AAA Ltr.). The AAA also apparently took Uber off its Registry. ECF 23-4 (4/30/20 AAA Ltr.). The record confirms the AAA found Uber in default, and therefore Uber is not entitled to a stay under 9 U.S.C. § 3.

### 2.   The Issue Of Uber's Default Would Properly Be Before This Court If It Had Not Been Decided Already By the AAA.

Uber argues that the AAA, and not this Court, should decide whether it defaulted. Because

the AAA already has decided that Uber defaulted, Uber's motion should be denied rather easily. But if the AAA had not already held that Uber was in default for not abiding by its payment rules, then that issue is properly before this Court. And under binding precedent, Uber's non-payment of fees in the arbitral forum constitutes default.

Several courts of appeals, including the Ninth Circuit, have suggested that issues of waiver and default are nondelegable issues that a court may decide, and further, that a party's failure to pay arbitration fees is grounds for default. *See Sink*, 352 F.3d at 1199-1200 ("Citing Aden's non-payment, the arbitrator on August 23, 2001, entered an Order finding Aden to be in default in the arbitration proceeding. It was not clearly erroneous for the district court to find, in confirmation, that Aden had defaulted in arbitration"); *Cahill*, 786 F.3d at 1294-95 ("**Failure to pay arbitration fees constitutes a 'default' under § 3.**") (emphasis added); *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 14 n.10 (1st Cir. 2005) ("We are not sure that waiver can, in all cases, be contracted away from the court's competence at all. The 'default' language in Section 3 of the FAA, which as we noted includes waiver, perhaps gives courts a duty, which cannot be shifted by contract between the parties, to determine whether waiver has occurred.").

In *Marie*, the First Circuit acknowledged that sending a waiver claim to an arbitrator would be "exceptionally inefficient." 402 F.3d at 13-14 ("If the arbitrator were to find that the defendant had waived its right to arbitrate, then the case would inevitably end up back before the district court with the plaintiff again pressing his claims. The case would have bounced back and forth between tribunals without making any progress.") (citations omitted). Similarly, in *Sink*, the Ninth Circuit held it would be inefficient to allow an arbitrator to decide the issue of default. 352 F.3d at 1201. There, the court considered whether a party that failed to make payment in arbitration, resulting in the cancellation of the arbitration, could then compel arbitration and continue a stay of the district court proceedings because it had later come up with the funds to pay for the arbitration. *Id.* at 1198-99. The court held that doing so would contradict the FAA's twin purposes of facilitating the "efficient and expeditious resolution of claims" and ensuring "judicial enforcement of privately made agreements to arbitrate." *Id.* at 1201 (denying motion to compel arbitration by party who had previously defaulted).

Just as in *Sink*, here there is conclusive evidence that Uber was in default. *See, e.g.,* Cabalo Decl. Exh. B (4/18/20 AAA Ltr.). Indeed, Uber itself has conceded it failed to pay all necessary AAA fees. Motion at 17:24-18:2. Uber's efforts to paint the facts in a better light to support its arguments fail. Its attempt to describe the AAA's declination as "temporary," Motion at 18:13-14, are contrary to the AAA's own statements on the matter. *See* Cabalo Decl. Exh. A (4/18/20 AAA Ltr.); ECF 23-4 (4/30/20 AAA Ltr.). Similarly, Uber's dubious description of its nonpayment as "inadvertent administrative payment errors," *see* Motion at 16:15-18:14, and argument that its nonpayment was unintentional and for cases unrelated to Ms. Greco's case, *id.*, are beside the point—even if true—because the non-conformance with the AAA's rules and policies constituted default, as the Ninth Circuit has held and the AAA itself ruled here.[5]

## V.     CONCLUSION

Uber is not entitled to a stay of these proceedings or an order compelling arbitration because the arbitration "has been had in accordance with the terms of the agreement," Uber is in default of the agreement, and Ms. Greco did not fail, neglect, or refuse to arbitrate. Accordingly, Ms. Greco respectfully requests this Court deny Defendants' motion to compel arbitration.


Dated: August 14, 2020                    PEIFFER WOLF CARR KANE & CONWAY
                                          A PROFESSIONAL LAW CORPORATION

                                          */s/ Catherine Cabalo*
                                          BY: CATHERINE CABALO
                                          Attorneys for Plaintiff
                                          LUCIA GRECO

---

[5] If this Court finds it relevant that Uber claims its nonpayment was an inadvertent oversight or administrative error, Ms. Greco requests limited discovery on this issue.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL                    12                    Case No.  4:20-CV-02698-YGR
ARBITRATION