Andrew M. Spurchise, Bar No. 245998
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022.3298
Telephone: 212.583.9600
Facsimile: 212.832.2719

Alice H. Wang, Bar No. 289631
LITTLER MENDELSON, P.C.
333 Bush Street, 34th Floor
San Francisco, California 94104
Telephone:   415.433.1940
Facsimile:   415.399.8490

Attorneys for Defendants
UBER TECHNOLOGIES, INC.; RASIER, LLC;
and RASIER-CA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LUCIA GRECO,<br><br>             Plaintiff,<br><br>     v.<br><br>UBER TECHNOLOGIES, INC.; RASIER, LLC; and RASIER-CA, LLC,<br><br>             Defendants. | Case No. 4:20-cv-02698-YGR<br><br>**REPLY IN SUPPORT OF DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC AND RASIER-CA, LLC'S MOTION TO COMPEL ARBITRATION**<br><br>Date:        September 8, 2020<br>Time:        2:00 p.m.<br>Judge:       Hon. Yvonne Gonzalez Rogers<br>Location:   1301 Clay Street, Ctrm. 1,<br>                 4th Floor.<br><br>Complaint Filed: April 19, 2020 |

(Case No. 4:20-cv-02698-YGR)

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ............................................................................................................. 6

II.  ARGUMENT ................................................................................................................... 7

    A.   The Parties Delegated Gateway Questions Of Arbitrability, Including Default Or Waiver, To The Arbitrator. ................................................................................. 7

    B.   The AAA's Temporary Declination To Administer Plaintiff's Arbitration Due To An Inadvertent Administrative Misunderstanding Between Uber And The AAA In Unrelated Cases Does Not Invalidate Plaintiff's Arbitration Agreement. ........................................................................................................... 9

    C.   Uber Did Not Default On Arbitration, No "Arbitration Has Been Had" In Accordance With The Arbitration Agreement, And Uber Is Entitled To A Stay Pending Arbitration. .................................................................................... 12

    D.   Plaintiff's Half-Hearted Claims About Screen Readers Are Insufficient. ................. 15

III. CONCLUSION ............................................................................................................... 17

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

2.   (Case No. 4:20-cv-02698-YGR)

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Adame v. Ally Fin., Inc.*,
 No. 2:17-CV-01654-SVW-KS, 2017 WL 8218291 (C.D. Cal. Aug. 23, 2017)................11, 12

*ATSA of California, Inc. v. Continental Insurance Co.*,
 702 F.2d 172 (9th Cir. 1983), *amended*, 754 F.2d 1394 (1985) ..............................................13

*Britton v. Co-op Banking Grp.*,
 916 F.2d 1405 (9th Cir. 1990) ..............................................................................................14

*Carroll v. Wells Fargo & Co.*,
 No. 15-CV-02321-EMC, 2017 WL 956629 (N.D. Cal. Mar. 13, 2017)................................13

*Chico v. Hilton Worldwide, Inc.*,
 No. CV 14-5750-JFW SSX, 2014 WL 5088240 (C.D. Cal. Oct. 7, 2014)............................15

*Cordas v. Uber Techs., Inc.*,
 228 F. Supp. 3d 985 (N.D. Cal. 2017) ..................................................................................16

*Cubria v. Uber Techs., Inc.*,
 242 F. Supp. 3d 541 (W.D. Tex. 2017)..................................................................................16

*Ferguson v. Corinthian Colleges, Inc.*,
 733 F.3d 928 (9th Cir. 2013) .................................................................................................11

*Fisher v. A.G. Becker Paribas Inc.*,
 791 F.2d 691 (9th Cir. 1986) .................................................................................................13

*Forreststream Holdings Ltd. v. Shenkman*,
 No. 16-CV-01609-LB, 2017 WL 1112963 (N.D. Cal. Mar. 24, 2017) .................................15

*Freeman v. SmartPay Leasing, LLC*,
 771 Fed. Appx. 926................................................................................................................15

*Garcia v. Mason Contract Prod., LLC*,
 No. 08-23103-CIV, 2010 WL 3259922 (S.D. Fla. Aug. 18, 2010) .......................................12

*Guan v. Uber Techs., Inc.*,
 236 F. Supp. 3d 711 (E.D.N.Y. 2017) ...................................................................................16

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
 139 S. Ct. 524 (2019)..........................................................................................................7, 8

*Howsam v. Dean Witter Reynolds, Inc.*,
 537 U.S. 79 (2002)...................................................................................................................8

*Marie v. Allied Home Mortgage Corp.*,
    402 F.3d 1 (1st Cir. 2005) ............................................................................................... 8

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ............................................................................................ 16

*Mohamed v. Uber Techs., Inc.*,
    109 F.Supp.3d 1185 (N.D. Ca. 2015), *rev'd in part on other grounds*, 848 F.3d
    1201 (9th Cir. 2016) ..................................................................................................... 16

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) ........................................................................................ 7

*Molina v. Scandinavian Designs, Inc.*,
    2014 WL 1615177 (N.D.Cal. Apr.21, 2014) ............................................................... 15

*Morales v. Sun Constructors, Inc.*,
    541 F.3d 218 (3rd Cir.2008) ......................................................................................... 15

*Peng v. Uber Techs., Inc.*,
    237 F. Supp. 3d 36 (E.D.N.Y. 2017) ............................................................................ 16

*Pre-Paid Legal Servs., Inc. v. Cahill*,
    786 F.3d 1287 ............................................................................................................... 15

*Preston v. Ferrer*,
    552 U.S. 346 (2008) ...................................................................................................... 11

*Rapaport v. Soffer*,
    No. 2:10-CV-00935-KJD, 2011 WL 1827147 (D. Nev. May 12, 2011) ...................... 15

*Richards v. Ernst & Young, LLP*,
    744 F.3d 1072 (9th Cir. 2013) ...................................................................................... 13

*Shinto Shipping Co. v. Fibrex & Shipping Co.*,
    425 F. Supp. 1088 (N.D. Cal. 1976), *aff'd*, 572 F.2d 1328 (9th Cir. 1978) ................. 13

*Shinto Shipping Co. v. Fibrex & Shipping Co.*,
    572 F.2d 1328 (9th Cir. 1978) ...................................................................................... 13

*Sink v. Aden Enters.*,
    352 F.3d 1197 (9th Cir. 2005) ...................................................................................... 14

*Soto v. State Industrial Products, Inc.*,
    642 F.3d 67 (1st Cir. 2011) ........................................................................................... 15

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984) .......................................................................................................... 11

*United States v. Park Place Assocs., Ltd.*,
   563 F.3d 907 (9th Cir. 2009) ...............................................................................................13

*West v. Uber Technologies*,
   No. 2:18-cv-3001-PSG-GJS, ECF No. 47 (C.D. Cal. Sept. 5, 2018) ......................................16

**California Cases**

*Aanderud v. Superior Court*,
   13 Cal. App. 5th 880 (2017) ..................................................................................................8

*Fadaee v. Uber Techs. Inc.*,
   LASC Case No. BC681145 (2018)........................................................................................16

*Feld v. Uber Techs. Inc.*,
   LASC Case No. 19STCV26766 (2020) .................................................................................17

*Harounsheily v. Uber Techs. Inc.*,
   LASC Case No. 19STCV05712 (2019)..................................................................................17

*Nielsen v. Uber Techs. Inc.*,
   LASC Case No. BC705695 (2019).........................................................................................16

*Rosenthal v. Great Western Fin. Securities Corp.*,
   14 Cal. 4th 394 (1996) ...........................................................................................................16

*Sanchez v. Valencia Holding Co., LLC*,
   61 Cal.4th 899 (2015) ............................................................................................................16

**Federal Statutes**

9 U.S.C.
   § 5......................................................................................................................................6, 8, 11

California's Unruh Civil Rights Act...............................................................................................14

FAA
   § 3............................................................................................................................................15

## I. INTRODUCTION

Plaintiff Lucia Greco ("Plaintiff" or "Greco") does not dispute that her Arbitration Agreement with Uber is binding and enforceable as written. She does not challenge the Arbitration Agreement on grounds that it, or the delegation clause contained within, is unconscionable. And there was no default, waiver, and no "arbitration has been had" in accordance with the parties' Arbitration Agreement. All of Plaintiff's arguments have been delegated to, and thus must be raised before, an arbitrator.

To the extent the Court considers Plaintiff's arguments against arbitration despite the delegation clause (and it should not), Uber's Motion must still be granted. Plaintiff's primary argument relates to the AAA's initial decision not to administratively open this case because of Uber's inadvertent non-payment of fees in two *different and unrelated matters* with the AAA. Plaintiff asserts that the AAA's decision constituted default or waiver by Uber with respect to *her arbitration*. Plaintiff's argument fails.

First, neither the AAA nor Plaintiff has identified any AAA Rule that Uber violated, and there is none. Plaintiff ignores that the FAA—which governs and is specifically incorporated into the parties' Arbitration Agreement—provides a specific mechanism whereby courts must appoint an arbitrator to enable arbitrations to proceed when the chosen arbitration provider cannot or will not administer it. *See* 9 U.S.C. Section 5. Thus, even if the AAA was refusing administration of this case, which it is not, Uber would still be entitled to arbitration. Nevertheless, since the AAA has made clear its willingness to administer this case, Uber is entitled to proceed in arbitration in accordance with the parties' Arbitration Agreement.

Second, Uber never acted inconsistently with, defaulted on, or waived its right to arbitrate, and Plaintiff suffered no prejudice caused by the slight delay while Uber resolved outstanding administrative issues with the AAA in *other* matters. Plaintiff's AAA arbitration was never opened or initiated, and Uber never failed or refused to pay arbitration-related fees or otherwise refused to participate in *her* arbitration. In fact, the AAA declined to administratively open Plaintiff's case before Uber even became aware that Plaintiff had filed a demand, as Plaintiff did not serve Uber with her arbitration demand until after she filed her federal complaint the day *after* receiving AAA's April 18,

2020 letter. The AAA never requested Uber to pay any fees (or take any other action) regarding Plaintiff's claim. There was no waiver or default.

Third, no arbitration "has been had" in accordance with the parties' Arbitration Agreement. (*See* Opp. at 9:21-12:12.) The AAA did not open the matter and never appointed an arbitrator. This matter is not like the cases cited by Plaintiff.

Accordingly, the Court should grant Uber's motion to compel arbitration of Plaintiff's claims and stay this case pending arbitration.

## II. ARGUMENT

### A. The Parties Delegated Gateway Questions Of Arbitrability, Including Default Or Waiver, To The Arbitrator.

The Court need not decide the issues raised in Plaintiff's Opposition because the parties clearly and unmistakably delegated these threshold questions of arbitrability to the arbitrator, and Plaintiff does not challenge the delegation clause (or the Arbitration Agreement as a whole) as unconscionable or otherwise. (Br. at 10:4-21; 14:19-16:19.)

In the Arbitration Agreement, the parties agreed that the arbitrator, not the court, "shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of th[e] Arbitration Agreement . . . . The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including . . . waiver, delay, laches or estoppel." (Dkt. 24-5 at p. 9; Dkt. 24-7 at p. 3.) This language shows clear and unmistakable intent to delegate issues regarding formation and default to the arbitrator, and this intent must be honored. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (courts must respect clear and unmistakable delegations of arbitrability to an arbitrator and may not circumvent those delegations by weighing the merits of the arbitrability question itself); *see also Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (clear and unmistakable delegation provisions must be enforced unless unconscionable, and unconscionability challenge must be raised "specific to the delegation provision.") *quoting Rent-A-Center, West, Inc., v. Jackson*, 561 U.S. 63, 73-74 (2010).

"This is not the only evidence of the parties' intent to contractually delegate issues of arbitrability to a decision maker other than the court. An arbitration provision's reference to, or

7.   (Case No. 4:20-cv-02698-YGR)
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION
LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

incorporation of, arbitration rules that give the arbitrator the power or responsibility to decide issues of arbitrability may constitute clear and unmistakable evidence the parties intended the arbitrator to decide those issues." *See, e.g., Aanderud v. Superior Court*, 13 Cal. App. 5th 880, 892 (2017) (arbitration provision states that the parties "agree to arbitrate all disputes, claims and controversies arising out of or relating to … the interpretation, validity, or enforceability of the Agreement, including the determination of the scope or applicability of this Section 5 [the 'Arbitration of Disputes' section], . . . delegates to the arbitrator questions of arbitrability and is clear and unmistakable evidence that the parties intended to arbitrate arbitrability."). Likewise, here, AAA Rule R-14 specifically states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." The Supreme Court has held such threshold issues include Plaintiff's contentions that Uber waived and/or defaulted on the Arbitration Agreement. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (procedural questions which bear on a dispute's final disposition are presumptively not for the judge, but for an arbitrator to decide, and "the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'"), *quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). In short, once the AAA opens the matter and appoints an arbitrator and the matter proceeds, if Plaintiff wishes to argue that Uber waived its right to compel arbitration, she can raise that argument.

Plaintiff's reliance on *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1 (1st Cir. 2005) is misplaced. *Marie* held that the employment contract in question stating that issues of "arbitrability" were for the arbitrator did not evince a clear and unmistakable intent to have the issue of waiver decided by an arbitrator where, *inter alia*, there were "no references to waiver or similar terms anywhere in the arbitration agreement." *Id* at 15. That is not the case here. As stated above, Uber's Arbitration Agreement with Plaintiff is clear and unambiguous that issues of waiver are for the arbitrator, not the Court. The Supreme Court's *Henry Schein* ruling (issued after *Marie*) directs this Court to honor that agreement without exception.

Further, Plaintiff's contention that the issue of waiver or default has already been decided by the AAA is false. The AAA is an arbitration administrator, not the arbitrator with authority to resolve

such issues. As the AAA states in the preface to its Consumer Rules: "As administrator, ... the AAA does not decide the merits of a case or make any rulings on issues such as what documents must be shared with each side. Because the AAA's role is only administrative, the AAA cannot overrule or change an arbitrator's decisions or rulings." AAA Consumer Arbitration Rules at p. 6 ("About the AAA"), found at https://adr.org/sites/default/files/Consumer%20Rules.pdf, last visited August 23, 2020.  The AAA did not initiate the matter or appoint an arbitrator, and no arbitrator held a hearing on whether Uber waived its right to arbitrate against Plaintiff or defaulted in its arbitration with Plaintiff. The AAA never opened the case at all, nor did it determine that Uber failed to comply with the AAA Consumer Rules.  Rule 1(d)[1], alluded to by the AAA in its April 18 Letter, relates to review of the substantive fairness of parties' arbitration agreements, not payment issues in other cases. And Rule 54, relied on by Plaintiff, relates to payment issues in the matter at issue, not other unrelated matters.  AAA never assessed any fees on Uber in relation to *Plaintiff's* filed demand.  Rule 54 has no bearing.

The Arbitration Agreement explicitly delegates each of Plaintiff's challenges—formation, waiver and default—to the arbitrator. That contractual agreement must be enforced.

**B.   The AAA's Temporary Declination To Administer Plaintiff's Arbitration Due To An Inadvertent Administrative Misunderstanding Between Uber And The AAA In Unrelated Cases Does Not Invalidate Plaintiff's Arbitration Agreement.**

Even if the Court decides Plaintiff's challenges to arbitration (it should not), Plaintiff must still be ordered to arbitration.

Plaintiff argues that she should not be compelled to arbitration because she already filed her claims with the AAA, which "refused to administer those claims" due to an administrative and inadvertent error (immediately corrected) in unrelated cases with Uber. (Opp. 8:19-24.)  However, the AAA's decision not to open Plaintiff's claim does not vitiate the entire arbitration agreement nor

---

[1]   Rule 1(d) provides: "The AAA administers consumer disputes that meet the due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules*.  The AAA will accept cases after the AAA reviews the parties' arbitration agreement and if the AAA determines the agreement substantially and materially complies with the due process standards of these Rules and the *Consumer Due Process Protocol*."   AAA Consumer Arbitration Rules at p. 10 ("Applicability (When the AAA Applies These Rules)"), found at https://adr.org/sites/default/files/Consumer%20Rules.pdf, last visited August 23, 2020.

constitute a breach, default or waiver. Promptly resolved misunderstandings between the AAA and Uber in unrelated matters, which were remedied immediately when they came to light, does not deprive Uber of its contractual right to arbitration. To hold otherwise would be directly contrary to the FAA and the facts.

First, Uber established in its opening papers that it apparently did not pay some fees in separate and unrelated matters prior to Plaintiff's filing of her demand with the AAA. (Br. at 12:15-23.) Uber did not become aware of this, or of Plaintiff's AAA filing, until Plaintiff filed her lawsuit in this court (which she did immediately after receiving the AAA's April 18, 2020 letter). *Id*. As soon as it learned of the issue, Uber immediately resolved it and demanded that Plaintiff proceed in arbitration, but she refused. *Id*. at 12:24-25.  At no time did Uber fail to pay any fee related to Plaintiff's demand and in fact none were assessed. This is not a knowing and intentional waiver of Uber's rights to resolve disputes in arbitration, nor a default or refusal to proceed in arbitration by Uber.

While Plaintiff makes much out of the fact that the parties' agreement specifies the AAA Rules will apply, Uber did not violate any AAA Consumer Rule. The AAA did not state that Uber did so and Plaintiff has not identified any rule violation. AAA Consumer Rule 1(d), cited by Plaintiff and referenced by AAA in its April 18, 2020 letter, does not provide that an arbitration agreement is invalid due to non-payment of fees in unrelated matters, nor that non-payment in other matters constitutes default or waiver. Instead, it allows the AAA to decline to administer arbitrations governed by an arbitration agreement that fails to meet substantive fairness standards outlined in AAA's Consumer Due Process Protocol and Consumer Arbitration Rules. No one has suggested that Uber's arbitration provision itself does not meet AAA's standards for substantive fairness. To the contrary, AAA's renewed willingness to administer Plaintiff's arbitration confirms that Uber's Arbitration Agreement meets the Due Process Protocol and Consumer Arbitration Rules.  And Rule 54, relied on by Plaintiff, relates to payment issues in the matter at issue, not other matters.  In other words, it allows an arbitrator to declare a default in a pending arbitration if a party fails to pay fees in that arbitration—not other arbitrations pending with different parties and a different arbitrator.  Rule 54 has no bearing.

Second, even if the AAA still would not administer the matter (which is not the case here), the FAA specifically provides a mechanism permitting arbitration to proceed when the chosen arbitration

provider cannot or will not act. *See* 9 U.S.C. Section 5. Under Section 5, even when the method for appointing an arbitrator fails or a selected arbitration provider declines to administer a particular case, the FAA provides that a court should appoint an arbitrator. Because the AAA has agreed to administer Plaintiff's claims, Uber is merely asking that the case be sent back to the AAA in accordance with the terms of the arbitration provision. This Court must follow the FAA, and any rule that is inconsistent with it is preempted. *See Preston v. Ferrer*, 552 U.S. 346, 356-57 (2008); *see also Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) ("In enacting Section 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agree to resolve by arbitration."); *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 932 (9th Cir. 2013) ("Pursuant to the Supremacy Clause of the United States Constitution, 'the FAA preempts contrary state law.'") (citation omitted)). The AAA's initial decision not to open Plaintiff's arbitration demand cannot undo Plaintiff's arbitration agreement because such an outcome would run afoul of the FAA's stated intent to save arbitration agreements even if the chosen provider declines.

Third, Plaintiff's reliance on *Adame v. Ally Fin., Inc.*, No. 2:17-CV-01654-SVW-KS, 2017 WL 8218291, at *1 (C.D. Cal. Aug. 23, 2017) is misplaced. *Adame* states that the AAA declined to administer a case because Ally Financial did not comply with AAA "policies" regarding consumer claims, and then relies on AAA rule 1(d). *Adame* is distinguishable. While the district court opinion does not discuss the facts at issue, the brief filed by the plaintiff in that action reveals that AAA declined to administer matters involving Ally Financial at least in part because Ally failed to waive a provision in its arbitration agreement that violated AAA's standards for consumer fairness -- i.e., its arbitration provision was substantively offensive to the AAA. *See* Case No. 17-cv-01654-SVW-KS, Dkt. No. 22. That places the *Adame* case within the scope of AAA Rule 1(d), which addresses the AAA's review of the substantive fairness of arbitration *provisions*, but not *payment issues*. ("The AAA administers consumer disputes that meet the due process standards contained in the Consumer Due Process Protocol and the Consumer Arbitration Rules. The AAA will accept cases after the AAA reviews the parties' arbitration agreement and if the AAA determines the agreement *substantially and materially complies with the due process standards* of these Rules and the Consumer Due Process

Protocol. Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.") (emphasis added). To the extent the *Adame* court intended to state that Rule 1(d) means isolated instances of non-payment in one matter can vitiate an arbitration agreement in another matter, that would be inaccurate. As stated above, Rule 1(d) applies when a business' arbitration agreement does not comply with the AAA's policies about substantive fairness. Rule 1(d) says nothing about the impact of an entity's non-payment of AAA fees in other, separate matters, and does not state that a party to an arbitration agreement may proceed in court if the counter-party did not make payments on other cases. And, as stated above, neither the AAA nor Plaintiff have identified any AAA Rule that actually says non-payment in one matter can undo an arbitration agreement in a separate matter or can be cause for a claimant to proceed in court.[2]

**C.   Uber Did Not Default On Arbitration, No "Arbitration Has Been Had" In Accordance With The Arbitration Agreement, And Uber Is Entitled To A Stay Pending Arbitration.**

Plaintiff also argues that Uber is not entitled to a stay pending arbitration because the arbitration "has been had in accordance with the terms of the Agreement" and because Uber waived its right to arbitrate for failure to pay arbitration fees in separate, unrelated matters. Plaintiff is wrong on both counts.

First, no arbitration has "been had" in accordance with the terms of the Arbitration Agreement or otherwise because—as explained above—the AAA never even initiated arbitration proceedings and no arbitrator was ever appointed in Plaintiff's case.

Second, nothing in the record supports a finding that Uber waived its right to arbitrate disputes with Plaintiff. To the contrary, the AAA's April 18, 2020 letter to the parties states only that the AAA declined to administer Plaintiff's claim "at this time", *not* that it conclusively refused to administer the case because it deemed Uber to have defaulted on its right to arbitrate *Plaintiff's* claims in *her* case. *C.f. Garcia v. Mason Contract Prod., LLC*, No. 08-23103-CIV, 2010 WL 3259922, at *4 (S.D. Fla.

---

[2]   An additional distinguishing feature of *Adame* is that the provision at issue there did not include a delegation clause that specifically includes waiver and default, as does the agreement between Uber and Greco. The arbitration clause in *Adame* provided that: "[a]ny claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute) , . . . shall . . . be resolved by neutral, binding arbitration and not by a court action." Case No. 2:17-cv-01654-SVW-KS, Dkt. No. 17-2, Exhibit A.

1   Aug. 18, 2010) (describing "default" as occurring where Defendant persistently failed to pay its share
2   of arbitrator's fee in same arbitration even after receiving repeated notices that timely payment had
3   not been received, causing the AAA to close and "refuse[]" to reopen a case).  After Uber promptly
4   remedied the outstanding payment issue in the separate and unrelated cases, the AAA invited the
5   parties back to arbitration, and it was *Plaintiff* who refused to arbitrate (necessitating this Motion).

6   "Any examination of whether the right to compel arbitration has been waived must be
7   conducted in light of the strong federal policy favoring enforcement of arbitration agreements."
8   *Carroll v. Wells Fargo & Co.*, No. 15-CV-02321-EMC, 2017 WL 956629, at *4 (N.D. Cal. Mar. 13,
9   2017) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. 1, 24-25 (1983); *Shinto Shipping Co. v. Fibrex
10  & Shipping Co.*, 572 F.2d 1328, 1330 (9th Cir. 1978) (waiver is not favored and the facts must be
11  viewed in light of the strong federal policy supporting arbitration agreements).  Because "[w]aiver of
12  a contractual right to arbitration is not favored . . . any party arguing waiver of arbitration bears a
13  heavy burden of proof."  *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986); *see
14  also Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1074 (9th Cir. 2013).  "A finding of waiver [of
15  arbitration] must be supported by convincing evidence and clear equity."  *Shinto Shipping Co. v. Fibrex
16  & Shipping Co.*, 425 F. Supp. 1088, 1092 (N.D. Cal. 1976), *aff'd*, 572 F.2d 1328 (9th Cir. 1978).

17  "A Party seeking to prove waiver of a right to arbitration must demonstrate:  (1) knowledge of
18  an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice
19  to the party opposing arbitration resulting from such inconsistent acts."  *Fisher*, 791 F.2d at 694; *see
20  also Shinto Shipping*, 572 F.2d at 1330 (the court "must be convinced not only that the appellee acted
21  inconsistently with that arbitration right, but that the appellant was prejudiced by this action before we
22  can find a waiver"); *ATSA of California, Inc. v. Continental Insurance Co.*, 702 F.2d 172, 175 (9th
23  Cir. 1983) (inconsistent behavior alone is not sufficient; the party opposing arbitration must have
24  suffered prejudice), *amended*, 754 F.2d 1394 (1985).

25  Plaintiff cannot meet any of these requirements.  First, at the time Plaintiff submitted her
26  demand for arbitration to the AAA, Uber was not aware of the existence of any administrative issues
27  with the AAA nor of Plaintiff's dispute because she did not serve the demand on Uber.  (Br. at 11:14-
28  25.)  Uber therefore could not have waived the right by failing to arbitrate.  *See United States v. Park*

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

13.                    (Case No. 4:20-cv-02698-YGR)
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

1   *Place Assocs., Ltd.*, 563 F.3d 907, 935, n. 10 (9th Cir. 2009) ("waiver is the ***intentional*** relinquishment or abandonment of a known right.") (emphasis added); *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1413 (9th Cir. 1990) ("Appellees provided no evidence establishing when Liebling had 'knowledge' of his right to compel arbitration."). Second, Uber did not act inconsistently with the right to arbitrate. As stated above, as soon as Uber learned of the administrative payment issues the AAA raised, Uber immediately remedied them and demanded that Plaintiff resolve her dispute in arbitration. (Br. at 12:20-25.) This is clearly not a case of waiver, where Uber was not even aware of Plaintiff's demand with the AAA when the AAA initially declined the matter. Third, Plaintiff has not demonstrated how the slight delay at issue here would prejudice her in any way. Plaintiff contends that she would suffer prejudice if forced to "refile her claim after receiving the April 30, 2020 notice from the AAA" because one of her claimed service denials (allegedly March 28, 2018) falls outside the two-year statute of limitations for California's Unruh Civil Rights Act. This is a red herring because Uber never asserted the statute of limitations defense for the claims asserted in Plaintiff's March 27, 2020 AAA demand that meet the statute of limitations, and will not do so. And even if Uber did, Plaintiff's argument would almost certainly fail, especially where AAA has unambiguously offered to "reopen" the matter. Plaintiff could have raised this issue with Uber and requested confirmation Uber would not assert the statute of limitations as to the one alleged incident, but instead immediately ran to this Court.

Because Plaintiff cannot meet any of the elements required for finding waiver of arbitration by Uber, and because no arbitration between the parties "has been had," the Court should grant the Motion, order Plaintiff to arbitrate the dispute alleged in the Complaint and stay further proceedings in this forum.[3]

---

[3]   None of the cases that Plaintiff cites in support of her argument that a party's failure to pay arbitration fees is grounds for default impacts the outcome of the above analysis. Uber's opening brief addresses the circumstances in which the Ninth Circuit has declined to enforce an arbitration agreement in the specific context of one party's failure to pay filing fees (Br. at 23:11-23), and each case Plaintiff offers falls squarely within one of these two scenarios, i.e., (a) when one party to the agreement affirmatively refuses to participate in the arbitration at issue, or (b) when the arbitral forum has conclusively refused a case because a party has failed to pay its filing fee in *the arbitration at issue*: *Sink v. Aden Enters.*, 352 F.3d 1197, 1199-2000 (9th Cir. 2005) (affirming finding of default after party received multiple notices that arbitration costs *in that same matter* were due by a date certain, the party did not pay these costs on time, provided no prior notice that it would be unable to pay, and presented no evidence that at the time payment was due in the arbitration that it had made any

**D.      Plaintiff's Half-Hearted Claims About Screen Readers Are Insufficient.**

Plaintiff does not expressly argue that she did not agree to Uber's Terms of Use and the Arbitration Agreement included therein, but mentions she believes she could not use her screen reader to review the Terms. Even if Plaintiff actually made that argument, it would fail because parties cannot escape contracts claiming they did not or could not read them. "[I]t is '[a] cardinal rule of contract law … that a party's failure to read a contract, or to carefully read a contract, before signing it is no defense to the contract's enforcement.'" *Forreststream Holdings Ltd. v. Shenkman*, No. 16-CV-01609-LB, 2017 WL 1112963, at *8 (N.D. Cal. Mar. 24, 2017), *quoting Desert Outdoor Adver. V. Super. Ct.*, 196 Cal. App. 4th 866, 872 (2011). Parties who assent to a contract are charged with understanding its terms even if they are unable to read the agreement. *See, e.g.*, *Molina v. Scandinavian Designs, Inc.*, 2014 WL 1615177, at *3–4 (N.D.Cal. Apr.21, 2014) (holding that arbitration agreement was not void for lack of mutual assent even if plaintiff could read very little English, because his signature manifested his assent and there were no facts to suggest that his employer engaged in fraud); *Chico v. Hilton Worldwide, Inc.*, No. CV 14-5750-JFW SSX, 2014 WL 5088240, at *6 (C.D. Cal. Oct. 7, 2014), *citing with approval Soto v. State Industrial Products, Inc.,* 642 F.3d 67, 78 (1st Cir. 2011) (quotations and citations omitted) ("[I]t is a general and well established principle of contract law that one who is ignorant of the language in which a document is written, or who is illiterate, may be bound to a contract by negligently failing to learn its contents.") and *Morales v. Sun Constructors, Inc.,* 541 F.3d 218, 222 (3rd Cir.2008) ("In the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to

---

genuine efforts to make alternate payment arrangements); *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1288-89; 1294 (10th Cir. 2015) (lifting stay was permissible under Section 3 of FAA after Cahill refused to pay his share of arbitration fees following repeated requests from the AAA *regarding that same matter*); *Freeman v. SmartPay Leasing, LLC*, 771 Fed. Appx. 926, 930; 932 (11th Cir. 2019) (affirmed finding that JAMS declined to administer a claim due to party's refusal to pay initial filing fee *in that matter* after multiple requests for full payment); *Rapaport v. Soffer*, No. 2:10-CV-00935-KJD, 2011 WL 1827147 at *2 (D. Nev. May 12, 2011) (party in default in arbitration under Section 3 of the FAA after inability and failure to pay his portion of the arbitration fees *in that same matter*, resulting in the AAA terminating arbitration). Each of these cases is distinguishable in that the party's failure to pay arbitration fees was in the *same* arbitration at issue, not, as here, in unrelated matters. Furthermore, unlike these cases, Plaintiff is not being denied the arbitral forum with no choice but to pursue her claims in court. Uber is ready and willing to proceed with arbitration (as is the AAA), and has at all times acted consistently with this intent. It is Plaintiff who now refuses to agree to participate in the arbitration.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

15.     (Case No. 4:20-cv-02698-YGR)
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

whether an English-language agreement the offeree executes is enforceable."). In this context, federal courts have explicitly held that foreign language speaking drivers who assented to Uber's arbitration provision—which was provided solely in English—could not raise a valid defense to contract formation based on their inability to read or understand the agreement. *See, e.g., Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 49 (E.D.N.Y. 2017) (enforcing arbitration agreements provided solely in English notwithstanding Plaintiffs' limited English proficiency); *accord Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711 (E.D.N.Y. 2017). *See also Mohamed v. Uber Techs., Inc.*, 109 F.Supp.3d 1185, 1197 (N.D. Ca. 2015) (rejecting plaintiff's argument that he could not legally assent to the contract because he did not sufficiently understand English, and explaining that a "party who agrees to terms in writing without understanding or investigating those terms does so at his own peril") (quotation omitted), *rev'd in part on other grounds*, 848 F.3d 1201 (9th Cir. 2016). Likewise, blindness does not, absent fraud, raise a question about the validity of the arbitration agreement. *Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal. 4th 394, 429 (1996). Nor is a party under any "obligation to highlight [an] arbitration clause of its contract . . . [or] required to specifically call [an arbitration] clause to [the other party's] attention." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 914 (2015). In fact, "such an obligation would be preempted by the FAA." *Id*.

Plaintiff's claim that she should not be bound because she now thinks the Terms of Use did not work with her screen reader is no different than a scenario where a person who is blind signs a paper contract that she cannot read and later claims ignorance. Plaintiff does not dispute that she had no choice but to create an account to use the Uber App, nor does she dispute that, as part of that registration process, she electronically consented to conspicuous Terms and Conditions hyperlinked immediately above the "sign-up button" when registering to use the Uber App. Nor does she argue that Uber engaged in fraud or overreach with regard to the registration process, or that her failure to fully understand the terms to which she was consenting was excusable.[4] She simply claims now to

---

[4] Judges in California and nationwide have repeatedly affirmed Uber's Arbitration Agreement and validated the registration process as enforceable. *See e.g.*, *West v. Uber Technologies*, No. 2:18-cv-3001-PSG-GJS, ECF No. 47, at 7 (C.D. Cal. Sept. 5, 2018); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80 (2d Cir. 2017); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017); *Cubria v. Uber Techs., Inc.*, 242 F. Supp. 3d 541, 548 (W.D. Tex. 2017); *Fadaee v. Uber Techs. Inc.*, LASC Case No. BC681145 (2018); *Nielsen*

have not read the Terms and other parts of the registration process when she registered in March 2013. This is not a valid defense to contract enforcement and, under these circumstances, she is bound by the agreement.

Second, Plaintiff's claim that she cannot recall receiving and is unable to locate an email from November 2016 concerning Uber's updated Terms and Conditions (in order to undermine her later consent to an updated version of Uber's rider terms) is similarly unavailing to negate the clear and undisputed evidence affirming her agreement to arbitrate.[5]  Claiming that she does not presently recall receiving and cannot presently locate an email is not significant given Uber's evidence of what actually occurred, and the fact she may have simply deleted it earlier and forgot.  Third, Plaintiff's claim of ignorance regarding Uber's updated Terms is disingenuous in light of the fact that she concedes she was made aware of them at some point prior to initiating the present dispute, and she networked a ride via the Uber App as recently as July 1, 2020. (Opp. at 5:21-23; Br. at 10:1-3.)  Finally, given that Plaintiff affirmatively represents that she "filed a Demand for Arbitration with the AAA for damages against Defendants, *in compliance with the directives of the arbitration provision*," (Opp. at 6:12-14), she should be estopped from simultaneously taking the inconsistent position that she is not bound by Uber's Terms.

### III. CONCLUSION

Plaintiff cannot escape her agreement to arbitrate this dispute with Uber. An enforceable arbitration agreement exists and covers the dispute at issue here, and Uber did not default or waive its

---

*v. Uber Techs. Inc.*, LASC Case No. BC705695 (2019); *Feld v. Uber Techs. Inc.,* LASC Case No. 19STCV26766 (2020); *Harounsheily v. Uber Techs. Inc.*, LASC Case No. 19STCV05712 (2019).

[5]     Plaintiff insists that "she never received any such email" in November 2016 alerting her of an update to Uber's Terms and Conditions.  However, Uber's business records reflect that an email with the subject line, "We've Updated Our Terms of Use" was sent to the email address associated with the account registered to Plaintiff in November 2016, and Plaintiff does not contend that her email address on file with Uber was incorrect. *See* Dkt. 24 ("Barajas Decl.") at ¶ 14.  Plaintiff further indicates that she "created an email filter that would direct all incoming emails from Uber to a specific file in her email box [and] [w]ith the exception of advertisements . . . she has kept all emails from Uber." (Opp. at 5:11-16.)  However, Plaintiff's self-serving statements leave open important questions such as whether (and how is Plaintiff certain that) her auto filter always functioned as intended, whether Plaintiff may have seen the 2016 email and mistakenly determined it was an advertisement, and whether Plaintiff disengaged any auto deletion features in her email system.  Foundational questions such as these must be assessed before taking Plaintiff's statements at face value.

right to arbitrate disputes with Ms. Greco. The Court should therefore order Plaintiff to arbitrate all of her claims against Uber and stay Plaintiff's claims pending the outcome of arbitration.

Dated: August 24, 2020

/s/ *Andrew M. Spurchise*
ANDREW M. SPURCHISE
ALICE H. WANG
LITTLER MENDELSON, P.C. Attorney for Defendants
UBER TECHNOLOGIES, INC., RASIER, LLC and RASIER-CA, LLC

4826-4349-3832.7 073208.1995

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION