1

2

3                    **UNITED STATES DISTRICT COURT**

4                  **NORTHERN DISTRICT OF CALIFORNIA**

5

6    **LUCIA GRECO,**                          CASE NO.  4:20-cv-02698-YGR

7                   Plaintiff**,**
                                              **ORDER DENYING DEFENDANTS' MOTION**
8         vs.                                 **TO COMPEL ARBITRATION**

9    **UBER TECHNOLOGIES, INC., ET AL.,**      Re: Dkt. No. 14

10                  Defendants**.**

11

12          Plaintiff Lucia Greco brings this action for violation of the Americans with Disabilities Act

13   ("ADA") and the California Unruh Act against defendants Uber Technologies, Inc., Raisier LLC,

14   and Rasier-CA LLC (collectively, "Uber").  (Dkt. No. 1 ("Compl.") ¶¶ 55-76.)  Now before the

15   Court is Uber's motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA").

16   (Dkt. No. 14 ("MTC.").)  Having carefully considered the pleadings and the papers and exhibits

17   submitted, the Court **DENIES** Uber's motion to compel.[1]

18        **I.    BACKGROUND**

19          Ms. Greco is visually impaired and uses a guide dog.  (Dkt. No. 30-2 ("Greco Decl.") ¶ 3.)

20   In 2013, Ms. Greco signed up for Uber—a ride sharing service that allows users to request rides

21   from drivers.  (*Id.* ¶ 7; Dkt No. 17 ("Barajas Decl.") ¶ 2.)  Upon signup, Ms. Greco agreed to

22   "Terms and Conditions" that included the provision that "any dispute, claim or controversy arising

23   out of or relating to this Agreement . . . or the use of the Service or Application . . . will be settled

24   by binding arbitration."  (Barajas Decl. ¶¶ 6-13; Dkt. No. 17-5 ("2012 Terms and Conditions") at

25   9; Greco Decl. ¶ 7.)  The agreement specified that such "arbitration will be administered by the

26   American Arbitration Association ('AAA') in accordance with the Commercial Arbitration Rules

27

28          [1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court
     finds the motion appropriate for resolution without oral argument.

<div style="writing-mode: vertical">United States District Court
Northern District of California</div>

1   and the Supplementary Procedures for Consumer Related Disputes."  (2012 Terms and Conditions

2   at 9.)  It also permitted Uber to change the terms and conditions, stating that continued use of the

3   application and service indicates consent to those rules.  (*Id*. at 2.)

4         In 2016, Uber updated its terms and conditions, reiterating that Ms. Greco and Uber agreed

5   to arbitrate "any dispute" arising from Ms. Greco's "access to or use of the Services" and further

6   specifying that the arbitrator shall have "exclusive authority to resolve any disputes relating to . . .

7   any defense to arbitration," such as "waiver, delay, latches or estoppel."  (Barajas Decl. ¶¶ 14-15;

8   Dkt. No. 17-6 ("2016 Terms and Conditions") at 2; Greco Decl. ¶ 8.)

9         On March 27, 2020, Ms. Greco filed a demand for arbitration with the AAA.  (Compl. ¶

10  52; Dkt. No. 18-1 ("Arbitration Demand").)  Ms. Greco alleged—as she does in the complaint—

11  that Uber drivers repeatedly cancelled rides after learning of Ms. Greco's guide dog, leaving her

12  stranded, late, and humiliated.  (Arbitration Demand at 1.)  Ms. Greco also alleged that Uber failed

13  to train and supervise its drivers and is liable for the resulting discrimination.  (*Id*. at 2.)  The

14  demand was served on Uber on April 21, 2020.  (Dkt. No. 18 ("Jackson Decl.") ¶ 4.)

15        However, prior to service, the AAA sent a letter stating that Uber "failed to comply with

16  the AAA's policies regarding consumer claims" prior to the filing of the arbitration, so the AAA

17  "must decline to administer this claim and any other claim between [Uber] and its consumers."

18  (Dkt. No. 1-1 ("AAA Letter") at 1.)  The letter stated that the AAA "administratively closed our

19  file," and that pursuant to Consumer Rule R-1(d), "either party may choose to submit its dispute to

20  the appropriate court for resolution."  (*Id*.)  It further advised Uber that if it wishes for the AAA to

21  "consider accepting consumer disputes going forward," it must register its clause on Consumer

22  Clause Registry.  (*Id*. at 2.)

23        Upon receiving the letter, Uber contacted AAA by phone and learned that it had failed to

24  pay fees in two unrelated matters pending before the AAA.  (Jackson Decl. ¶ 6.)  Uber then paid

25  those fees, and AAA reinstated Uber  to the consumer arbitration registry on April 30, 2020.  (*Id*. ¶

26  9.)  When Uber requested that AAA reopen Ms. Greco's case, AAA sent a letter reiterating that

27  "AAA declined to administer the matter and closed its file" and that "[b]ecause this case was

28  previously closed, the AAA will not reopen the matter unless the parties agree to reopen the

United States District Court
Northern District of California

matter." (*Id.* ¶ 10; Dkt. No. 18-4 ("AAA Second Letter") at 1.)  However, the letter also stated that "the AAA will abide by any court order directing the manner in which the previously closed case should or should not proceed" and that if "Claimant wishes to refile the case," "the AAA would administer this case." (AAA Second Letter at 1.)  Otherwise, it stated that "the case will remain closed as stated" previously.  (*Id.*)

Uber contacted Ms. Greco to request that she refile the arbitration.  (Jackson Decl. ¶ 11.)  Ms. Greco declined and filed the instant action.  (*Id.*)

## II.    LEGAL STANDARD

Under the FAA, "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration" may "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  The court's role in addressing a question of arbitrability generally is "limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  If the court finds that both of these requirements are met, the FAA requires it to enforce the provision in accordance with its terms. *Id.*  In addition, the court must stay civil proceedings where the issues are asserted "until such arbitration has been had," unless the party seeking the stay is in default.  9 U.S.C. § 3.

The FAA reflects both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted); *see Mortensen v. Bresnan Commuc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) ("The [FAA] . . . has been interpreted to embody 'a liberal federal policy favoring arbitration.'") (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as which the arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

United States District Court
Northern District of California

### III.   ANALYSIS

The parties do not dispute that they have a valid contract to arbitrate.  They also do not dispute that the issues raised in this litigation fall within the scope of that contract.  However, Ms. Greco argues that arbitration has already "been had" in accordance with the terms of the contract, so there is no "failure, neglect, or refusal" to arbitrate sufficient to compel arbitration, nor any basis to stay the litigation.  9 U.S.C. §§ 3, 4.

Section 4 of the FAA provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement . . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4.

In *Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010 (9th Cir. 2004), the court considered "failure, neglect, or refusal of another to arbitrate" based on failure to pay fees. The parties initially proceeded with arbitration, but before the final hearings, one party became unable to pay its share of the arbitrators' fees.  *Id.* at 1011.  AAA offered the other party the option of advancing the required fees, but that party refused, and the arbitration was terminated.  *Id.*  The paying party then successfully petitioned a district court to compel arbitration, including by forcing the non-paying party to pay fees, and to hold that failure to do so constituted "failure, neglect, or refusal" to arbitrate under 9 U.S.C. § 4.  *Id.*  The Ninth Circuit reversed.

Acknowledging that arbitration is a creature of contract law, the court looked to the parties' agreement, which stated that all disputes "shall be settled by binding arbitration" in accordance with "then-current rules of the American Arbitration Association."  *Id.* at 1012.  The AAA rules, in turn, vested the arbitrators with discretion to allocate expenses and require fees to be paid in advance.  *Id.*  Since the AAA rules allowed the arbitrators to condition arbitration on

4

1    pre-payment of fees, "there was no 'failure, neglect, or refusal' by [the non-paying party] to

2    arbitrate" and "the arbitration has proceeded pursuant to the parties' agreement and the rules they

3    incorporated." *Id.* at 1013.  Accordingly, there was "no basis for an order . . . compelling

4    arbitration." *Id.*

5         The holding in *Lifescan* was confirmed in *Tillman v. Tillman*, 825 F.3d 1069 (9th Cir.

6    2016) on a slightly different procedural posture.  Section 3 of the FAA requires a court to stay

7    proceedings "until [] arbitration has been had in accordance with the terms of the agreement." 9

8    U.S.C. § 3.  Addressing the meaning of "has been had," the court found that parties whose

9    arbitration was terminated due to non-payment of fees "had" arbitration in accordance with the

10   terms.  *Tillman*, 825 F.3d at 1073.  Similar to *Lifescan*, the arbitration agreement "explicitly

11   incorporated the AAA's rules" and those rules allowed the arbitrator to terminate proceedings

12   without a decision on the merits.  *Id.*  Since "[a]ll of these steps were followed," the arbitration

13   "had 'been had' pursuant to the agreement."  *Id.* at 1075.  Ultimately, the court concluded that

14   "parties have the right under the FAA to choose the rules under which their arbitration will be

15   conducted," and since parties "chose rules that allowed the arbitrator to terminate their arbitration

16   in the event of nonpayment," such termination satisfies the parties' agreement.  *Id.* at 1076.

17   Moreover, and tellingly for this case, the court reversed the district court's dismissal of the case

18   and ordered it to adjudicate the claims on the merits.  *Id.* at 1076.

19        *Lifescan*, as confirmed by *Tillman*, resolves the current dispute.  Like the parties in those

20   cases, Uber and Ms. Greco had contracted to resolve their disputes in accordance with AAA rules.

21   Those rules require businesses to pay certain fees and state that "AAA will decline to administer

22   consumer arbitrations . . . if the business declines to pay the . . . fees."  (Dkt. No. 30-1 ("Cabalo

23   Decl.") Ex. A at 16, 32.)  Once AAA declines to arbitrate, the rules provide that "either party may

24   choose to submit its dispute to the appropriate court for resolution."  (*Id.* at 10.)  *Uber expressly

25   agreed to be bound by these rules*.  It cannot now complain of their enforcement.  In this case, it is

26   not Ms. Greco that seeks to escape the agreement, but Uber itself, by asking the Court to overturn

27   the AAA rules and force the case back to arbitration.  The Court declines to do so.

28

United States District Court
Northern District of California

1    Uber's remaining arguments miss the mark.[2]  Uber argues that "gateway" issues of

2    arbitrability, such as waiver and breach, have been delegated to the arbitrator.  But these issues are

3    not in dispute here:  the parties agree that the contract is valid, and Ms. Greco only asserts her

4    "breach" theory in the alternative to finding that arbitration has taken place.  Uber also argues that

5    there was no waiver of arbitration because Uber paid the outstanding fees as soon as it learned of

6    them.  Relatedly, Uber argues that it had not breached the agreement because the fees at issue

7    were intended for other cases.  Both of these arguments assume that the contract must have been

8    invalidated.  But there is no reason to think that—the arbitration here took place in accordance

9    with the parties' terms and has come to the court under those same terms.

10    Uber further points out that the FAA allows a court to select an alternative arbitration

11    mechanism when the one chosen in an agreement becomes unavailable.  9 U.S.C. § 5.  Under

12    Section 5 of the FAA, courts may "designate and appoint an arbitrator" if "a method of naming or

13    appointing an arbitrator . . . shall fail."  *Id.*  But courts have interpreted this provision narrowly to

14    give force to the parties' intent.  *See Newton v. Am. Debt. Servs., Inc.*, No. C-11-3328 EMC, 2012

15    WL 3155719, at **5-7 (N.D. Cal. Aug. 2, 2012).  Thus, courts cannot select an arbitrator when the

16    parties' original selection was integral or central to the agreement.  *See Brown v. ITT Consumer*

17    *Fin. Corp.*, 211 F.3d 1217 (11th Cir. 2000).  Here, there is no need to appoint another arbitrator

18    because the parties' original intent is clear:  they meant to be governed by AAA rules, which allow

19    the arbitrator to decline to arbitrate and the parties to then proceed with litigation.

20    Finally, Uber challenges AAA's substantive determination by arguing that it has breached

21    no rule and that its contracts are substantively fair.  That is exactly the type of collateral attack that

22    modern arbitration law aims to avoid.  The AAA is in a far better position to know its own rules

23    and to exercise discretion according to those rules.  To the extent that the Court reviews the

24    AAA's decision, it detects no error in its application of its rules.  That Uber does not think the

25    outcome fair because arbitration was terminated without substantive proceedings and based on

26    innocent error is of no import—Uber agreed to the rules that allow that outcome.

27

28    ———————————
         [2] Uber notably fails to address either *Lifescan* or *Tillerman* in its briefing.  Its arguments
    have little relevance to the primary issue as the result.

Accordingly, there is no "failure, neglect or refusal . . . to arbitrate" and nothing for the Court to compel because the arbitration has already taken place in accordance with the parties' agreement, reaching the court under those same terms.  Uber's motion is **DENIED**.

**IV.     CONCLUSION**

For the foregoing reasons, the Court **DENIES** Uber's motion to compel.  Uber **SHALL** respond the complaint within twenty-one (21) days of this Order.  The Court further **SETS** a case management conference for October 19, 2020.

This Order terminates Docket Number 14.

**IT IS SO ORDERED.**

Dated:  September 3, 2020

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California