Adam B. Wolf, Bar No. 215914
Catherine Cabalo, Bar No. 248198
Tracey B. Cowan, Bar No. 250053
PEIFFER WOLF CARR KANE & CONWAY
A Professional Law Corporation
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone:   415.766.3592
Facsimile:   415.402.0058
Email:        awolf@peifferwolf.com
              ccabalo@peifferwolf.com
              tcowan@peifferwolf.com

Attorneys for Plaintiff LUCIA GRECO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LUCIA GRECO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC.; RAISER, LLC; and RAISER-CA, LLC,<br><br>　　　　　Defendants. | Case No.  4:20-cv-02698-YGR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY PENDING APPEAL**<br><br>Date:　　　November 17, 2020<br>Time:　　　2:00 p.m.<br>Judge:　　　Hon. Yvonne Gonzalez Rogers<br>Location:　　Zoom video<br><br>Complaint Filed:  April 19, 2020 |

**TABLE OF CONTENT**

I. INTRODUCTION .................................................................................................................. 1

II. RELEVANT BACKGROUND ............................................................................................. 1

III. LEGAL STANDARD............................................................................................................ 3

IV. ARGUMENT ......................................................................................................................... 4

    A.   Defendants' Appeal of This Court's Order Is Unlikely to Succeed And Does Not Present Serious Legal Questions. ................................................................................................ 4

    B.   Uber Will Not Be Irreparably Injured Absent A Stay. ...................................................... 7

    C.   A Stay Would Substantially Injure Ms. Greco. ................................................................ 9

    D.   The Public Interest Favors Remedying Civil Rights Violations...................................... 10

V. CONCLUSION..................................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES**

*Blair v. Rent-A-Center*, Case No. C 17-02335 WHA, 2018 WL 2234049
(N.D. Cal. May 16, 2018) .................................................................................................. 9

*Bradberry v. T-Mobile USA, Inc.*, Case No. C 06-6567 CW, 2007 U.S. Dist. LEXIS 58801
(N.D. Cal. Aug. 2, 2007) .................................................................................................... 9

*Gillette v. Uber Techs.*, No. C-14-5241 EMC, 2015 U.S. Dist. LEXIS 95709
(N.D. Cal. July 22, 2015 ................................................................................................ 11 n2

*Guifu Li v. A Perfect Day Franchise, Inc.*, Case No. 5:10-cv-01189-LHK, 2011 U.S. Dist. LEXIS
60814 (N.D. Cal. June 8, 2011) ....................................................................................... 7, 8

*Herd v. Cty. of San Bernardino*, Case No. ED CV 17-02545-AB (SPx), 2018 U.S. Dist. LEXIS
225891 (C.D. Cal. Sept. 17, 2018) .................................................................................. 10

*Hilton v. Braunskill*, 481 U.S. 770 (1986)) ............................................................................. 3

*In re Pacific Fertility Ctr. Litig.*, Case No. 18-cv-01586-JSC, 2019 U.S. Dist. LEXIS 108158
(N.D. Cal. June 27, 2019) ............................................................................................... 8, 9

*In re Pangang Grp. Co., Ltd.*, 901 F.3d 1046 (9th Cir. 2018) ........................................... 6 n1

*Kaltwasser v. Cingular Wireless LLC*, Case No. C 07-00411, 2008 U.S. Dist. LEXIS 68601
(N.D. Cal. Aug. 22, 2008) .................................................................................................. 9

*Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) ......................................................... 3, 4

*Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010 (9th Cir. 2004) ................. 5

*Morse v. Servicemaster Global Holdings, Inc.*, Case No. C10-628-SI, 2013 U.S. Dist. LEXIS 3663
(N.D. Cal. Jan. 8, 2013) ..................................................................................................... 8

*Mount Graham Coalition v. Thomas*, 89 F.3d 554 (9th Cir. 1996) .................................... 4, 7

*Nken v. Holder*, 556 U.S. 418 (2009) ..................................................................................... 3

*Pagtalunan v. Galaza*, 291 F.3d 639 (9th Cir. 2002) ............................................................. 9

*Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959 (9th Cir. 2002) ................................. 10

*Sampson v. Murray*, 415 U.S. 61 (1974) ................................................................................ 8

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814 (9th Cir 2001) ....... 10

*Smallwood v. Nat'l Can Co.*, 583 F.2d 419 (9th Cir. 1978) .................................................................. 10

*Spieler v. Mt. Diablo Unified Sch. Dist.*, Case No. C 98-0951 CW, 2007 U.S. Dist. LEXIS 83695 (N.D. Cal. Nov. 2, 2007) ........................................................................................................... 11

*Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949 (N.D. Cal. 2019) ................................... 7

*Tillman v. Tillman*, 825 F.3d 1069 (9th Cir. 2016) ................................................................................ 5

*Virginian Ry. Co. v. United States*, 272 U.S. 658 (1926) ..................................................................... 3

*Zumbrun Law Firm v. Cal. Legislature*, 165 Cal. App. 4th, 1619 (Cal. Ct. App. 2008) ................. 6 n1

**STATUTES**

9 U.S.C. § 3 ............................................................................................................................................. 5

Cal. Civil Code § 51(f) ......................................................................................................................... 10

## I.   INTRODUCTION

Defendants' motion to stay this case pending appeal should be denied. This Court denied Defendants' motion to compel arbitration based on settled law, and a stay would substantially injure Ms. Greco.

Defendants have not established a substantial likelihood of success on the merits of their appeals, or even a serious legal question. In a straightforward application of settled law, this Court rejected the same arguments that Defendants lodge again here.

Nor will Defendants suffer irreparable harm without a stay. While Defendants suggest that continued litigation inherently negates the benefits of arbitration, courts routinely reject that argument: there is no automatic stay for parties appealing arbitration denials. Moreover, the relatively simple discovery the parties will conduct in this forum—whether Uber is a transportation company and whether Ms. Greco was denied rides by Uber drivers due to the presence of her guide dog—would be equally useful in the arbitration that Uber seeks.

In contrast, Ms. Greco will be substantially injured if this case is stayed for the years that Defendants' appeal is pending. Her burden of proof in this case requires making a factual showing that she was denied rides based on her disability dozens of times dating back to 2018. Ms. Greco's and other witnesses' memories of the relevant incidents and experiences will certainly fade in the intervening time between now and the outcome of Defendants' appeal, substantially and unfairly hindering her ability to prove her case.

Finally, the public interest favors denying a stay. While there is a general federal policy in favor of arbitration, there is an overriding public interest in preventing discrimination. If a stay is granted—and thus if there is no declaration that Ms. Greco's rights were violated repeatedly—Ms. Greco faces years of more discrimination while the appeal is pending.

## II.   RELEVANT BACKGROUND

Ms. Greco is visually impaired. Dkt. No. 1 (Compl.) ¶ 2; Dkt No. 30-2 at ¶ 3. She uses a guide dog to travel safely and independently. Dkt No. 30-2 at ¶ 3. Due to her visual impairment, Ms. Greco cannot drive. *Id.* at ¶ 4. She relies on rideshare taxi services such as that provided by Defendants. *Id.* However, when she books rides through Uber, she is repeatedly denied service because Uber drivers

1  refuse to allow her guide dog in their vehicles. *Id.* ¶ 5. The gravamen of Ms. Greco's complaint is that (1) such refusals to transport her guide dog and her violate federal and state anti-discrimination law, and (2) Uber is responsible for its drivers' unlawful conduct.

Although she did not see the arbitration agreement at the time of signing, Ms. Greco acknowledges that she signed arbitration agreements, which Uber demands of all riders, before she could utilize Uber for transportation. Those agreements stipulate that disputes between the parties will be administered by the American Arbitration Association ("AAA"), "in accordance with" AAA rules. Dkt. No. 24-5 at 9; Dkt. No. 24-7 at 3.

Accordingly, on March 27, 2020, Ms. Greco filed a Demand for Arbitration with the AAA for damages against Defendants for their discriminatory conduct. Dkt. No. 30-1 at ¶ 2; Dkt. No. 30-2 at ¶ 10. Three weeks later, on April 18, 2020, Ms. Greco received a letter from the AAA, informing her that the AAA would not administer her claim—and all claims against Uber—because Uber failed to comply with the AAA's policies: "Prior to the filing of this arbitration, Uber . . . failed to comply with the AAA's policies regarding consumer claims. Accordingly, we must decline to administer this claim and any other claims between Uber . . . and its consumers at this time." Dkt. No. 1-1 at 1.

The AAA thus "closed [Ms. Greco's] file" and directed that, pursuant to "R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution." *Id.* Lastly, the AAA noted that it had de-registered Uber from its "Registry" on account of Uber's violations of AAA policies. *See id.* at 2.

In accordance with this communication from the arbitral forum of Uber's choosing, Ms. Greco promptly filed the instant action. Dkt. No. 1. More than ten days later, on April 30, 2020, the AAA alerted the parties that Uber addressed its noncompliance with the AAA's rules and policies, and thus reinstated Uber's registration with the AAA. Dkt. No. 23-4, at 1. Accordingly, the AAA stated that it would accept Uber's consumer cases filed *from April 30th going forward*. *Id.* At the same time, the AAA explicitly refused to reopen Ms. Greco's case unless both parties agreed to reopen the matter. *Id.* The AAA concluded: "Otherwise, the case will remain closed as stated in our letter of April 18, 2020." *Id.*

      Moving to compel arbitration, Uber claimed that its violation of AAA rules related to its failure to pay fees in multiple other matters more than a month before the AAA's April 18th letter. Dkt. No. 23 at ¶ 6. Uber tacitly admitted that the AAA had sent the unpaid invoices to Uber representatives, but apparently not to the specific "Uber employees who were managing the matters." *Id.* at ¶ 7. Uber never identified in this Court which Uber employees were actually notified by the AAA of the account delinquencies, how many times they were notified, or why the employees who were notified by the AAA did not forward that very relevant and important information to the Uber employees purportedly managing those cases. Uber also failed to identify how many times it received notices from the AAA regarding its outstanding balances or that continued non-payment would result in the AAA's refusal to administer any future consumer cases for Uber.

      This Court denied Uber's motion to compel arbitration. Dkt. No. 32. The Court held that, under the Federal Arbitration Act ("FAA"), binding Ninth Circuit case law, and the AAA's own rules, the arbitration had "been had." *Id.* at 4-5. Once the AAA—Uber's choice of arbitral forum—determined that it would not hear Ms. Greco's claim because Uber did not abide by the AAA's payment rules, then Ms. Greco was entitled to file her claim in court. *Id.*

      Uber now seeks a stay from further proceedings pending appeal, based on the same arguments that this Court rejected last month. Dkt. No. 40.

### III.    LEGAL STANDARD

      "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation and internal quotation marks omitted). "It is instead 'an exercise of judicial discretion,' and '[t]he propriety of its issue is depending upon the circumstances of the particular case.'" *Id.* (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926), and *Hilton v. Braunskill*, 481 U.S. 770, 777 (1986)). The party requesting the stay bears the burden of showing that the circumstances justify exercise of that discretion. *Nken*, 556 U.S. at 433-34.

      In determining whether a stay should issue, courts consider four factors: (1) likelihood of success on the merits of defendant's appeal, (2) whether the applicant will be irreparably injured absent a stay, (3) whether issuance of the stay will substantially injure the plaintiff, and (4) whether the public interest favors a stay. *Id.* at 434; *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011).

With respect to the first factor, a moving party bears the burden to show it is likely to succeed on the merits of its appeal or, instead, a lesser showing that its appeal presents "serious legal questions." *Leiva-Perez v. Holder*, 640 F.3d at 965-68. If the movant can meet only the lower standard of presenting a "serious legal issue," it can obtain a stay only if it demonstrates that the balance of hardships—the second and third factors of the test—tilts *sharply* in its favor. *Id.* at 971. Moreover, if the movant fails to satisfy the first factor altogether, the Court can deny the motion without considering the remaining factors. *Mount Graham Coalition v. Thomas*, 89 F.3d 554, 558 (9th Cir. 1996) (declining to evaluate balance of hardships and denying motion to stay pending appeal when stay applicant failed to satisfy first factor).

## IV. ARGUMENT

### A. Defendants' Appeal of This Court's Order Is Unlikely to Succeed And Does Not Present Serious Legal Questions.

Uber's appeal is unlikely to succeed on the merits, and indeed, does not present serious legal questions. In two pages of its order, this Court properly rejected Uber's main argument, holding that Ms. Greco properly filed her claims in this Court because the arbitration had already "been had" in accordance with the terms governing the Parties' arbitration agreement and the FAA. Dkt. No. 32 at 4-5. The Court's holding was well-grounded in Ninth Circuit precedent and is exceptionally unlikely to be disturbed on appeal.

*First*, Uber's argument regarding its breach and waiver of the arbitration agreement is of no moment now. In light of the Court's denying arbitration on separate grounds—that the arbitration had already "been had"—Uber's attempts to shoot down an alternative reason for denying arbitration is not relevant here. In language that resonates equally well in response to Uber's stay motion, this Court already cast aside Uber's arguments regarding breach and waiver:

> Uber argues that "gateway" issues of arbitrability, such as waiver and breach, have been delegated to the arbitrator. But these issues are not in dispute here: . . . Ms. Greco only asserts her "breach" theory in the alternative to finding that arbitration has taken place. Uber also argues that there was no waiver of arbitration because Uber paid the outstanding fees as soon as it learned of them. Relatedly, Uber argues that it had not breached the agreement because the fees at issue were intended for other cases. Both of these arguments assume that the

> contract must have been invalidated. But there is no reason to think that—*the arbitration here took place in accordance with the parties' terms and has come to the court under those same terms*.

Dkt. No. 32 at 6:1-9 (emphasis added).

*Second*, Uber's argument that the Court erred in finding that the arbitration was "had" is unsupported by case law. Upon reviewing Ninth Circuit precedent and the AAA rules, this Court correctly held that the arbitration was "had" when the AAA refused to allow Ms. Greco's arbitration to continue after finding that Uber was violating the forum's rules.

The FAA allows a party to file a lawsuit after an "arbitration has been had in accordance with the terms of the [arbitration] agreement . . . ." 9 U.S.C. § 3. Although the FAA does not provide guidance about the meaning of when an arbitration has "been had," the Ninth Circuit has filled in the gaps. In *Tillman v. Tillman*, 825 F.3d 1069, 1073 (9th Cir. 2016), and *Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010, 1011 (9th Cir. 2004), the Ninth Circuit held that arbitrations are "had" when a demand for arbitration is terminated because of a party's noncompliance with the arbitral forum's rules and policies. *See also* Dkt. No. 32 at 5 ("Addressing the meaning of 'has been had,' the [*Tillman*] court found that parties whose arbitration was terminated due to non-payment of fees 'had' arbitration in accordance with the terms [of the arbitration agreement].").

That is precisely what occurred here. Uber admittedly was in arrears on its payments to the AAA in arbitrations that were filed against the company, and the AAA naturally refused to allow Ms. Greco's arbitration against Uber to go any further as a result. As the Court held, this situation is squarely within the Ninth Circuit's holdings of *Tillman* and *Lifescan*.

Uber's attempts to distinguish these two cases is unavailing. The fact that the AAA Consumer Filing Team closed Ms. Greco's arbitration at the outset, as opposed to an assigned arbitrator terminating proceedings mid-arbitration, is a distinction without a difference. Although the arbitrations in *Tillman* and *Lifescan* were further along in the process than Ms. Greco's, all arbitrations had gone as far as they were permitted to go, and all were not decided on the merits before they were terminated because of a party's noncompliance with the AAA's rules and policies. *See Tillman*, 825 F.3d at 1071-72; *Lifescan*, 363 F.3d at 1011.

In this case, as in *Tillman* and *Lifescan*, the parties contracted to resolve their disputes in accordance with AAA rules. In all three cases, the arbitrations were terminated prior to a decision on the merits as a result of a party's not paying the fees that were owed to the AAA. In each case, the party who had been paying its arbitration fees thus was entitled to a decision on the merits of the claims—in court, but not in arbitration.

Uber next contends that this case is different because the AAA rules did not permit the arbitral forum to terminate Ms. Greco's arbitration on account of Uber's non-payment of fees. Uber's argument strains credulity. As a practical matter, of course an arbitral forum can decline to administer arbitrations involving a party who continuously refuses to pay its bills. The AAA does not need to work *pro bono* for Uber. This is backed up by the AAA's rules, which require payment of fees, and regardless, permit the AAA "in its sole discretion" to decline to accept an arbitration demand or to stop an existing arbitration on account of a party's "improper conduct." Dkt. No. 30-1 Ex. A at 32 (Rule R-55);[1] *see also id.* at 34 (imposing filing fees and case management fees on respondents, such as Uber), 16-17 (Rule R-12) ("The AAA will decline to administer consumer arbitrations arising out of that arbitration agreement where the business fails to pay the review fee. . . . The AAA will decline to administer consumer arbitrations arising out of that arbitration agreement if the business declines to pay the review and Registry fee.").

In short, the AAA need not continue administering cases for a delinquent business. Nor can Ms. Greco's rights to pursue her case be derailed in any manner based on Uber's failure to maintain its standing with its own unilaterally-selected arbitral forum. *Cf.* Dkt. No. 32 at 5 ("In this case, it is not Ms. Greco that seeks to escape the agreement, but Uber itself, by asking the Court to overturn

---

[1] AAA Rule 55 provides that inappropriate behavior is one example of "improper conduct." Uber might try to disclaim that failing to pay fees is "improper conduct" because non-payment is different from inappropriate behavior. But the rule merely notes that inappropriate behavior is included within "improper conduct," not that such behavior is the only type of conduct that triggers this rule. Regardless, the principle of *ejusdem generis* has no place here because the phrase "improper conduct" is too vague, and thus a tool of statutory interpretation to clarify its meaning is not warranted. *See In re Pangang Grp. Co., Ltd.*, 901 F.3d 1046, 1055-56 (9th Cir. 2018) (noting that "canons of construction provide guidance for interpreting ambiguous statutes," and refusing to apply the canon of *ejusdem generis* because the statute in question was not ambiguous); *Zumbrun Law Firm v. Cal. Legislature*, 165 Cal. App. 4th, 1619 (Cal. Ct. App. 2008) ("*[E]jusdem generis* is an aid to be used if the language is ambiguous."). There should be no doubt that a party's failing to pay its fees in multiple pending cases is "improper conduct" by the party.

the AAA rules and force the case back to arbitration. The Court declines to do so.").

Finally, Uber points out that Ms. Greco could simply file another arbitration demand with the AAA (now that Uber has paid its bills to the AAA). But a second filing of an arbitration is not required by the FAA or AAA rules. On the contrary, the AAA rules, which are incorporated into Uber's arbitration agreement, are clear: "Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution." Dkt. No. 30-1 Ex A. at 10; *see also* Dkt. No. 1-1, at 1 (AAA's advising Ms. Greco that its rules now permit her to file her claims in court).

Not only is Uber unlikely to prevail on appeal, but its appeal does not raise "serious legal questions." As Judge Koh has recognized, "serious legal questions" typically concern weighty matters like constitutionality, or when the Supreme Court has granted certiorari over the case at bar, or splits of authority regarding the enforceability of the very arbitration agreement in question. *Guifu Li v. A Perfect Day Franchise, Inc.*, Case No. 5:10-cv-01189-LHK, 2011 U.S. Dist. LEXIS 60814 (N.D. Cal. June 8, 2011), at *10-*11 (citing cases); *see also Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 953-54 (N.D. Cal. 2019) (citing cases). In *Guifu Li*, the court held that the stay movant did not raise a "serious legal question" when it acknowledged the court applied the proper legal test, but claimed that the court "misapplied" the test to the facts at hand. U.S. Dist. LEXIS 60814 at *11.

The same is true here. Uber does not dispute that Ms. Greco could have filed a lawsuit in this Court if her arbitration were "had." It simply disagrees that, on the facts presented here, an arbitration was "had." Defendants' assertion that the court incorrectly applied this well-established test in this case does not raise the "serious legal question" that is necessary to warrant a stay.

**B. Uber Will Not Be Irreparably Injured Absent A Stay.**

The Court need not evaluate irreparable injury or the remaining *Nken* factors because Uber failed to satisfy the first factor. *Mount Graham Coalition*, 89 F.3d 554 at 558. Regardless, Uber will not be irreparably injured if a stay is denied while the Ninth Circuit decides Uber's appeal. Although Uber attempts to ground irreparable harm in the loss of "speed and economy" supposedly inherent in arbitration, Dkt. No. 40 at 12:4-5, the facts do not support Uber's argument.

1   *First*, "speed" is antithetical to Uber's stay motion. Under the recently entered scheduling order, trial in this Court will commence in approximately 15 months, on January 31, 2022. Yet Uber seeks to delay the proceedings in this Court for the years that the Ninth Circuit will retain the appeal. Uber's request for a stay would sacrifice the speed that it purportedly desires.

Moreover, due to the relatively minimal discovery that this case will require, the Court was able to set a trial date for 15 months into the future. That is in fact a *shorter* timeframe to trial than is customary in AAA arbitrations for similar claims. For instance, in a similar case against Uber (for a different client who is blind and was denied numerous rides by Uber drivers) the Demand for Arbitration was filed on July 9, 2018, and the arbitration hearing is scheduled to commence December 15, 2020. Declaration of Catherine Cabalo ¶ 2. If speed is the touchstone, Uber will be irreparably harmed by waiting out a stay for years and then, *perhaps*, proceeding to arbitration.

*Second*, Uber will not be irreparably harmed by incurring litigation expenses in this judicial proceeding. As a threshold matter, most courts have held that expending money on litigation is not irreparable injury. *See, e.g.*, *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough."); *In re Pacific Fertility Ctr. Litig.*, Case No. 18-cv-01586-JSC, 2019 U.S. Dist. LEXIS 108158, at *16-*17 (N.D. Cal. June 27, 2019) (denying motion to stay pending appeal of denial of arbitration motion and noting: "Defendants cannot just rely on the costs of litigation and expenditure of resources—these exist in every interlocutory appeal."); *Morse v. Servicemaster Global Holdings, Inc.*, Case No. C10-628-SI, 2013 U.S. Dist. LEXIS 3663, at *13 (N.D. Cal. Jan. 8, 2013) (recognizing that "the money and time a party must expend [during the litigation] process, while burdensome, does not alone constitute irreparable injury"); *Guifu Li*, 2011 U.S. Dist. LEXIS 60814, at *12 ("Many courts, however, have concluded that incurring litigation expenses does not amount to an irreparable harm.") (citing cases).

Uber attempts to distinguish this majority rule by claiming that the AAA arbitration rules do not provide for "motions practice" or any discovery beyond a "limited exchange of documents." Dkt. No. 40 at 11:18-19, 22. That is factually incorrect. In the above-referenced arbitration against Uber, the parties were allowed multiple depositions, written discovery, formal requests for documents, and

dispositive motions. Cabalo Decl. ¶ 3. Uber knows this well, since it deposed the blind rider claimant and filed a summary judgment motion (which was denied on all but one peripheral and nondispositive issue). *Id.*

As this Court is aware from the latest status conference, the parties are not contemplating voluminous discovery in this case. The burden to Uber, if any, is slight. Regardless, even if Uber were to prevail on appeal, that discovery likely would have taken place in the arbitration and—in any event—would be useful to the parties in the arbitration. *Cf. In re Pacific Fertility Ctr.,* 2019 U.S. Dist. LEXIS 108158, at *17 ("[T]he discovery underway now will be necessary for arbitration as well and are thus not lost expenditures regardless of what happens on appeal."); *Blair v. Rent-A-Center*, Case No. C 17-02335 WHA, 2018 WL 2234049, at *6 (N.D. Cal. May 16, 2018) ("This argument is unconvincing for several reasons. First, discovery obtained here will be useful in any future arbitration.").

Uber has failed to establish that a denial of its motion to stay will amount to any injury, much less an irreparable one.

**C.  A Stay Would Substantially Injure Ms. Greco.**

A stay would impose a substantial hardship on Ms. Greco. Over the years-long period of an appeal, evidence will fade and Ms. Greco is likely to continue to suffer discrimination.

*First*, any delay in the district court unfairly risks the loss of relevant evidence while the case remains stayed. *See Bradberry v. T-Mobile USA, Inc.*, Case No. C 06-6567 CW, 2007 U.S. Dist. LEXIS 58801 (N.D. Cal. Aug. 2, 2007) (finding that "the risk of lost evidence . . . and the delay in litigation constitute a substantial injury to Plaintiff" and therefore "weighs against granting a stay"). Loss of evidence and fading memories are legitimate harms to a party. *See Kaltwasser v. Cingular Wireless LLC*, Case No. C 07-00411, 2008 U.S. Dist. LEXIS 68601 at *10 (N.D. Cal. Aug. 22, 2008) ("Unnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale") (citing *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002)). That is particularly true in a case like this, where the evidence of Uber drivers' discrimination is proven largely through the claimant's recollection of the incidents.

This case turns on Ms. Greco's ability to prove that she was denied Uber rides on dozens of occasions due to her service animal. It will be Ms. Greco's burden to establish the details and circumstances of each instance of discrimination under the ADA in order to secure damages under the Unruh Civil Rights Act. *See* Cal. Civil Code § 51(f). She will need to testify credibly about the events in question. The earliest incidents identified in Ms. Greco's Complaint date back to early 2018; her memory and recall of those incidents inevitably will fade with time. There is thus no question that a years-long delay on appeal will substantially injure Ms. Greco by diminishing the likelihood of her being able to meet her burden of proof in this case.

*Second*, if a stay is granted—and thus, if there is no declaration while this case is on appeal that Ms. Greco's rights were violated—Ms. Greco is very likely to suffer more instances of discrimination in the meantime. She was denied rides by Uber drivers *dozens* of times in the two years before she filed her complaint. Dkt. No. 1 ¶¶ 37, 42. Absent a declaration that her rights were violated and Uber is responsible for its drivers' discrimination, she surely will face more civil-rights violations over the next 2-3 years, while Uber's appeal is in the Ninth Circuit. *Cf. Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir 2001) ("We have held that where a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation.") (citing *Smallwood v. Nat'l Can Co.*, 583 F.2d 419, 420 (9th Cir. 1978)).

Accordingly, a stay would irreparably harm Ms. Greco.

**D. The Public Interest Favors Remedying Civil Rights Violations.**

Public-interest concerns also favor denying the stay motion. As discussed above, Ms. Greco is very likely to face repeated violations of her civil rights unless and until a court holds Uber responsible for the discrimination alleged in this case. Although there is a general federal policy favoring arbitration, where appropriate, that generalized public interest is outweighed by the public interest of remedying repeated and continued violations of civil rights. *Cf. Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002) (noting the importance of protecting against the infringement on core freedoms); *Herd v. Cty. of San Bernardino*, No. ED CV 17-02545-AB (SPx), 2018 U.S. Dist. LEXIS 225891 at *11-*12 (C.D. Cal. Sept. 17, 2018) (denying stay and noting that

"[t]he public interest favors speedy disposition of cases on their merits, particularly in civil rights cases"); *Spieler v. Mt. Diablo Unified Sch. Dist.*, Case No. C 98-0951 CW, 2007 U.S. Dist. LEXIS 83695 at *11-*12 (N.D. Cal. Nov. 2, 2007) (denying motion to stay in an ADA case, and noting that the public interest favors curtailing civil-rights violations).[2]

## V. CONCLUSION

Uber failed to meet its burden for a stay of these proceedings. Ms. Greco respectfully requests this Court deny Uber's motion and allow her to prosecute her civil-rights claims.

Dated: October 22, 2020

PEIFFER WOLF CARR KANE & CONWAY
A PROFESSIONAL LAW CORPORATION

*/s/ Catherine Cabalo*
BY: CATHERINE CABALO

Adam B. Wolf, Esq.
Catherine Cabalo, Esq.
Tracey Cowan, Esq.
PEIFFER WOLF CARR KANE & CONWAY
A Professional Law Corporation
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: 415.766.3592
Facsimile: 415.402.0058
awolf@peifferwolf.com
ccabalo@peifferwolf.com
tcowan@peifferwolf.com

*Attorneys for Plaintiff
LUCIA GRECO*

---

[2] In a footnote, Uber seeks in the alternative a "temporary stay" to seek a stay in the Ninth Circuit. Dkt. No. 40 at 2 n.1. This Court should deny that alternative request for the same reason that Judge Chen rejected the same argument from Uber in a different matter: "Because the Ninth Circuit would be obligated to perform the same analysis this Court completed if Uber asks the Circuit for a stay pending appeal, the Court further denies Uber's request for a temporary stay of this action so it can request a stay from the Ninth Circuit." *Gillette v. Uber Techs.*, No. C-14-5241 EMC, 2015 U.S. Dist. LEXIS 95709 at *20-*21 (N.D. Cal. July 22, 2015).