United States District Court
Northern District of California

1

2

3                          **UNITED STATES DISTRICT COURT**

4                          **NORTHERN DISTRICT OF CALIFORNIA**

5

6      **LUCIA GRECO,**                              CASE NO.  4:20-cv-02698-YGR

7              Plaintiff,

8          vs.                                       **ORDER DENYING DEFENDANTS' MOTION
                                                      TO STAY PENDING APPEAL**
9      **UBER TECHNOLOGIES, INC., ET AL.,**           Re: Dkt. Nos. 39, 40

10             Defendants.

11

12          Plaintiff Lucia Greco brings this action for violation of the Americans with Disabilities Act

13   ("ADA") and the California Unruh Act against defendants Uber Technologies, Inc., Raisier LLC,

14   and Rasier-CA LLC (collectively, "Uber").  (Dkt. No. 1 ("Compl.") ¶¶ 55-76.)  Uber moved to

15   compel arbitration, and the Court denied the motion.  (Dkt. No. 32 ("Order").)  Now before the

16   Court is Uber's motion to stay pending appeal of the motion to compel Order.  (Dkt. Nos. 39, 40.)

17   Having carefully considered the pleadings and the papers, the Court **DENIES** Uber's motion.[1]

18          **I.      BACKGROUND**

19          Ms. Greco alleges that Uber drivers refused to provide her rides due to her guide dog.

20   (Compl. ¶ 36.)  Since Ms. Greco agreed to Uber's user agreement upon sign-up, the parties had an

21   agreement to arbitrate their claims through binding arbitration administered by the American

22   Arbitration Association ("AAA") "in accordance with the Commercial Arbitration Rules and the

23   Supplementary Procedures for Consumer Related Disputes."  (Dkt. No. 17-5 ("Agreement") at 9.)

24          Ms. Greco filed her arbitration claim in March 2020.  (Dkt. No. 18-1.)  On April 18, 2020,

25   the AAA sent the parties a letter stating that Uber "failed to comply with the AAA's policies

26   regarding consumer claims" and that it "must decline to administer this claim" as the result.  (Dkt.

27

28          [1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court
     finds the motion appropriate for resolution without oral argument.

1   No. 1-1- ("AAA Letter") at 2.)  The letter stated that "[a]ccording to R-1(d) to the Consumer

2   Rules, should the AAA decline to administer an arbitration, either party may choose to submit this

3   dispute to the appropriate court for resolution."  (*Id.*)  Uber then contacted the AAA to regain

4   compliance and asked it to reopen the case.  (Dkt. No. 18 ("Decl.") ¶ 6.)  The AAA declined:

5   while acknowledging that Uber "addressed the issue," it stated that "the AAA will not reopen the

6   matter unless the parties agree to reopen the matter, or the AAA will abide by any court order

7   directing the manner in which the previously closed case should or should not proceed."  (Dkt. No.

8   18-4 ("AAA Second Letter") at 2.)

9        Ms. Greco filed her complaint on April 19, 2020.  Uber moved to compel arbitration

10  shortly after.  The Court denied Uber's motion because under *Lifescan, Inc. v. Premier Diabetic*

11  *Services, Inc.*, 363 F.3d 1010 (9th Cir. 2004), and *Tillman v. Tillman*, 825 F.3d 1069 (9th Cir.

12  2016), arbitration already "has been had" and Uber's motion amounted to a request for a second

13  arbitration (which the parties did not bargain for).  (Order at 4-6.)  Uber appealed to the Ninth

14  Circuit.  (Dkt. No. 33).  Uber now seeks to stay pending the appeal.

15  **II.    LEGAL STANDARD**

16       A court has discretion to stay a case pending appeal.  *Niken v. Holder*, 556 U.S. 418, 421

17  (2009).  No party has a right to a stay; rather, the party seeking the stay has the burden to show

18  that circumstances justify the exercise of discretion.[2]  *Id*. at 433-34.  The court considers four

19  factors in exercising its discretion:  "(1) whether the stay applicant has made a strong showing that

20  he is likely to succeed on the merits; (2) whether the applicant will be irreparable injured absent a

21  stay; (3) whether issuance of the stay will substantially injure the other parties interested in the

22  proceeding; and (4) where the public interest lies."  *Id*. at 426; *F.T.C. v. Qualcomm Inc.*, 935 F.3d

23  752, 755 (9th Cir. 2019).  The court weighs these factors using a "sliding scale" approach, where

24

25       [2] Uber cites cases from other circuits that require a stay pending appeal of an order denying
     a motion to compel arbitration.  *See, e.g.*, *McCauley v. Haliburton Energy Servs., Inc.*, 413 F.3d
26   1158, 1160 (10th Cir. 2005).  Those circuits require a stay because they consider arbitration to
     involve the merits of the claim, and an appeal divests the district court of jurisdiction over "those
27   aspects of the case involved in the appeal."  *See id*.  By contrast, the Ninth Circuit has held that
     "the issue of arbitrability [is] the only substantive issue presented" on appeal in such cases, so the
28   district court continues to have jurisdiction over the merits of the claims.  *See Britton v. Co-op*
     *Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "a strong showing of one element may offset a weaker showing of another." *Leiva-Perez v.*

2    *Holder*, 640 F.3d 962, 964 (9th Cir. 2011).

3         **III.**    **ANALYSIS**

4         **A.**    **Likelihood of Success on the Merits**

5         The first factor requires a party to show a "reasonable probability" or "fair prospect" of

6    success, but not that success is "more likely than not." *Leiva-Perez*, 640 F.3d at 966.  Uber argues

7    that it is "highly" likely to prevail on appeal because (1) arbitration was never commenced, (2)

8    arbitration was "administratively closed," rather than terminated, (3) the AAA misapplied its rules

9    in closing the case based on an unrelated fee payment, and (4) Uber neither breached the

10   arbitration agreement nor waived any rights under it.

11        The Court disagrees.  The point of *Lifescan* and *Tillman* is that arbitration, no matter its

12   form or content, is governed by the rules that the parties select in the agreement. *See Lifescan*,

13   363 F.3d at 1011-12 (recognizing that arbitration is a "matter of contract"); *Tillman*, 825 F.3d at

14   1074 (finding that the parties incorporated AAA rules and AAA followed those rules).  Where the

15   rules selected by the parties allow the AAA to decline arbitration, and for the parties to then

16   proceed with litigation, the AAA may decline arbitration and the parties may proceed with

17   litigation.  For comparison, if the parties had defined arbitration to involve waiting one hour and

18   then filing a complaint, arbitration would have "been had" even though the parties did nothing at

19   all.  Ultimately, the Federal Arbitration Act "does not confer a right to compel arbitration of any

20   dispute at any time," but only "the right to obtain an order directing that 'arbitration proceed *in the*

21   *manner provided for in [the parties'] agreement*.'" *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland*

22   *Stanford Jr. Univ.*, 489 U.S. 468, 474-75 (1989) (emphasis in original) (quoting 9 U.S.C. § 4).[3]

23

24

25        [3] *Volt* provides another illustration of the rule applied in *Lifescan* and *Tillman*.  There, the parties incorporated California rules of arbitration into their agreement, which provided for a stay in arbitration while related litigation was pending.  489 U.S. at 471. The Supreme Court held that

26   "by incorporating the California rules of arbitration into their agreement, the parties had agreed that arbitration would not proceed in [such] situations." *Id*. at 475.  "This was not a finding that

27   appellant 'waived' an FAA-guaranteed right to compel arbitration of this dispute, but a finding that *it had no such right in the first place*, because the parties' agreement did not require

28   arbitration to proceed in this situation." *Id*. at 475 (emphasis supplied).

1          Viewed in this lens, Uber's first and second arguments are not relevant because they define

2    the meaning of "arbitration" by reference to external considerations, rather than the terms of the

3    parties' agreement.  It does not matter whether arbitration was "commenced" or "terminated" by

4    some objective standard, only whether the parties complied with their end of the bargain.  By

5    incorporating rules that allow the AAA to decline arbitration and for the parties to submit their

6    claims to a court afterwards, the parties agreed to not require arbitration in these circumstances.

7    Uber fails to address these terms and thus fails to show a reasonable probability of success.[4]  *See*

8    *Lifescan*, 363 F.3d at 1011 (finding no basis to compel arbitration where the parties complied with

9    the agreement); *Tillman*, 825 F.3d at 1073 (finding that parties had a valid arbitration agreement

10   that covered the claims-at-issue, but that enforcing the agreement meant allowing the case to

11   proceed to litigation);

12         As to the third argument, Uber does not raise a "fair prospect" of success in showing that

13   the AAA misapplied its own rules.  As an initial matter, judicial review of arbitration decisions is

14   necessarily narrow.  *See, e.g.*, *Sovak v. Shugai Pharma Co.*, 280 F.3d 1266, 1271 (9th Cir. 2002).

15   Even substantive decisions will not be overturned unless the arbitrator is not "even arguably

16   construing or applying the contract."  *E. Assoc. Coal Corp. v. United Mine Workers of Am., Dist.*

17   *17*, 531 U.S. 57, 62 (2000).  Procedural questions arising from arbitration "are presumptively not

18   for the judge, but for an arbitrator, to decide."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S.

19   79, 84 (2002).  Moreover, "courts presume that the parties intend arbitrators, not courts, to decide

20   disputes about the meaning and application of particular procedural preconditions for the use of

21   arbitration."  *BG Grp., PLC v. Rep. of Argentina*, 572 U.S. 25, 34-35 (2014).  For these reasons

22   alone, Uber is not likely to succeed in showing that the AAA misapplied its own rules or, for that

23   matter, that any error would be subject to review by the courts.

24         In any case, the AAA's interpretation is reasonable.  The AAA consumer rules allow the

25   AAA to decline to arbitrate for failure to meet the standards outlined in its rules and protocols, and

26

27          [4] Indeed, Uber completely misses that Ms. Greco *has a contractual right to proceed with*
28   *litigation* in these circumstances.  Uber incorporated Rule 1(d) into its contract of adhesion and
     must have understood its consequences.

4

*United States District Court*
*Northern District of California*

1    Rule 12 expressly allows it to decline to administer arbitration for failure to pay fees.  (Dkt. No.

2    30-1, Ex. A at 13 (Rule 1(d)), 19 (Rule 12).)  Contrary to Uber's suggestion, Rule 55(i) permits

3    the AAA to assess fees other than those listed in the rules.  (*Id*. at 37.)  The rules also allow the

4    AAA to decline to administer arbitration "in its sole discretion" for "improper conduct."  (*Id.* at 32

5    (Rule 47).)  And Rule 53 makes clear that the AAA has the power to interpret its own rules.  (*Id*.

6    at 35.)  The parties therefore delegated the interpretation of the Rules to the AAA, and the AAA

7    reasonably interpreted them, consistent with the agreement.

8            Last, with respect to the fourth argument, the Court has already explained that neither

9    breach nor waiver are relevant to its determination.  (Order at 6.)  Indeed, Uber has no right to

10   waive in this case because the agreement does not require arbitration after the AAA declines to

11   arbitrate. *Cf. Volt*, 489 U.S. at 475.  Because Uber persists in raising irrelevant arguments while

12   merely skirting the main issue at hand—the requirements of the agreement that incorporated the

13   AAA rules—Uber fails to show a "fair prospect" of success on appeal.  Accordingly, this factor

14   weighs against a stay.

15           **B.       Irreparable Injury to Uber**

16           To show irreparable harm, Uber must demonstrate "probability," not merely "possibility,"

17   of irreparable injury. *Nken*, 556 U.S. at 434-35.  Here, Uber identifies only the time and expense

18   of litigating the case as "irreparable" injury.  Courts routinely reject such arguments. *See, e.g.*,

19   *Bally v. State Farm Life Ins. Co.*, 2020 WL 3035781, at \*5 (N.D. Cal. June 5, 2020); *Adams v.*

20   *Postmates, Inc.*, No. 19-3042 SBA, 2020 WL 1066980, at \*5 (N.D. Cal. Mar. 5, 2020); *Dekker v.*

21   *Vivant Solar, Inc.*, No. C 19-07918 WHA, 2020 WL 2322916, at \*2 (N.D. Cal. May 11, 2020);

22   *Dunson v. Cordis Corp.*, No. 16-cv-03076-EMC, 2016 WL 10679457, at \*3 (N.D. Cal. Nov. 8,

23   2016).   The Court does so here.  This factor weighs against a stay.

24           **C.       Injury to Plaintiff and Public Interest**

25           The remaining two factors also weigh against a stay.  Ms. Greco's claims depend on the

26   memories and testimony of Uber drivers, who may forget or become difficult to locate over time.

27   The risk of evidence loss is thus substantial. *Bradberry v. T-Mobile USA, Inc.*, Case No. C 06-

28   6567 CW, 2007 U.S. Dist. LEXIS 58801 (N.D. Cal. Aug. 2, 2007).  Moreover, the public interest

*United States District Court*
*Northern District of California*

favors the speedy resolution of claims.  *Fraihat v. U.S. Immigration & Customs Enforcement*, No. EDCV 19-1546 JGB (SHKx), 2020 WL 650441, at *4 (C.D. Cal. Oct. 30, 2020).  In these circumstances, the federal policy favoring arbitration does not outweigh the public interests on the other side, particularly in light of the low likelihood of success and the lack of irreparable injury. These factors therefore weigh against a stay.

**IV.     CONCLUSION**

For the foregoing reasons, the Court **DENIES** Uber's motion to stay.

**IT IS SO ORDERED.**

Dated:  January 14, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**